No. 22-2835

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC., individually, and on behalf of those similarly situated,

*Plaintiffs-Appellants*,

and CHAQUITA MCCLEARY,

*Plaintiff*,

v.

PAUL OKESON, SUZANNAH WILSON OVERHOLT, KAREN CELESTINO-HORSEMAN, and LITANY PYLE, in their official capacity as members of the Indiana Election Commission, and HOLLI SULLIVAN, in her official capacity as the Indiana Secretary of State,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 1:20-cv-01271-JPH-DLP

**BRIEF AND SHORT APPENDIX FOR PLAINTIFFS-APPELLANTS**

William R. Groth, Of Counsel
VLINK LAW FIRM LLC
3719 S. East St., Suite A
Indianapolis, IN 46227
(317) 637-2345, Ext. 132
WGroth@fdgtlaborlaw.com

Mark W. Sniderman
FINDLING PARK CONYERS
WOODY & SNIDERMAN, P.C.
151 N. Delaware Street, Ste. 1520
Indianapolis, IN 46204
(317) 231-1100
msniderman@findlingpark.com

Jed W. Glickstein
   *Counsel of Record*
Gary A. Isaac
Michael A. Scodro
Brett E. Legner
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
jglickstein@mayerbrown.com
gisaac@mayerbrown.com
mscodro@mayerbrown.com
blegner@mayerbrown.com

*Counsel for Plaintiffs-Appellants*

**CORPORATE DISCLOSURE STATEMENT FOR
INDIANA VOTE BY MAIL, INC.**

Pursuant to Fed. R. App. P. 26.1, Plaintiff Indiana Vote By Mail, Inc. states that it has no parent corporation, and that no publicly held corporation owns 10% or more of its stock.

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 22-2835

Short Caption: Tully v. Okeson

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐         **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
       BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES

       ELIZABETH KMIECIAK, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
       Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.


(3)    If the party, amicus or intervenor is a corporation:

       i)      Identify all its parent corporations, if any; and

               N/A

       ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

               N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

       N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

       N/A

Attorney's Signature: /s/ Jed W. Glickstein                    Date: 11/28/2022

Attorney's Printed Name:  Jed W. Glickstein

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  71 S. Wacker Drive

          Chicago, IL 60606

Phone Number: (312) 782-0600                    Fax Number:  (312) 701-7711

E-Mail Address: jglickstein@mayerbrown.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>22-2835</u>

Short Caption: <u>Tully v. Okeson</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

|   | **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** |
|---|---|

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines,</u>

<u>Elizabeth Kmcieiak, David Slivka, Dominic Tuminnello, and Indiana Vote By Mail, Inc.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Gary A. Isaac</u>    Date: <u>11/28/2022</u>

Attorney's Printed Name:  <u>Gary A. Isaac</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  <u>Mayer Brown LLP</u>

        <u>71 S. Wacker Drive, Chicago, IL 60606</u>

Phone Number: <u>(312) 786-0600</u>    Fax Number:  <u>(312) 701-7711</u>

E-Mail Address: <u>gisaac@mayerbrown.com</u>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2835

Short Caption: Tully v. Okeson

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐        **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines,

 Elizabeth Kmcieiak, David Slivka, Dominic Tuminnello, and Indiana Vote By Mail, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.


(3)    If the party, amicus or intervenor is a corporation:

   i)        Identify all its parent corporations, if any; and

     N/A

   ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Michael A. Scodro                    Date: 11/28/2022

Attorney's Printed Name:  Michael A. Scodro

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Mayer Brown LLP

 71 S. Wacker Drive, Chicago, IL 60606

Phone Number: (312) 786-0600                    Fax Number: (312) 701-7711

E-Mail Address: mscodro@mayerbrown.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2835

Short Caption: Tully v. Okeson

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines,

    Elizabeth Kmcieiak, David Slivka, Dominic Tuminnello, and Indiana Vote By Mail, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Brett. E. Legner    Date: 11/28/2022

Attorney's Printed Name:  Brett E. Legner

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Mayer Brown LLP

    71 S. Wacker Drive, Chicago, IL 60606

Phone Number: (312) 786-0600    Fax Number:  (312) 701-7711

E-Mail Address: blegner@mayerbrown.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2835

Short Caption: Tully v. Okeson

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines,

Elizabeth Kmcieiak, David Slivka, Dominic Tuminnello, and Indiana Vote By Mail, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ William R. Groth    Date: 11/28/2022

Attorney's Printed Name:  William R. Groth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ☑

Address:  Vlink Law Firm LLC

3719 S. East St, Suite A, Indianapolis, IN 46227

Phone Number: (317) 637-2345    Fax Number:  N/A

E-Mail Address: wgroth@fdgtlaborlaw.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-2835

Short Caption: Tully v. Okeson

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Barbara Tully, Katharine Black, Marc Black, David Carter, Rebecca Gaines,

    Elizabeth Kmcieiak, David Slivka, Dominic Tuminnello, and Indiana Vote By Mail, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP, Vlink Law Firm LLC, Findling Park Conyers Woody & Sniderman, P.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Mark W. Sniderman    Date: 11/28/2022

Attorney's Printed Name:  Mark W. Sniderman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Findling Park Conyers Woody & Sniderman, P.C.

    151 N. Delaware Street, Ste. 1520, Indianapolis, IN 46204

Phone Number: (317) 231-1100    Fax Number:  N/A

E-Mail Address: msniderman@findlingpark.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES PRESENTED ...................................... 1

STATEMENT OF THE CASE.............................................................. 1

    A.    Preliminary injunction proceedings ..................................... 2

    B.    Summary judgment proceedings ......................................... 4

SUMMARY OF ARGUMENT ............................................................. 5

STANDARD OF REVIEW ................................................................. 7

ARGUMENT ................................................................................... 7

I.    The Twenty-Sixth Amendment Does Not Just Lower The Voting Age ........... 8

II.    Absentee Voting Is Part Of The "Right To Vote." ........................................ 13

    A.    The Twenty-Sixth Amendment's text covers absentee voting............. 13

    B.    History and context support this interpretation............................... 15

    C.    The *McDonald* decision is inapposite .................................... 18

        1.    *McDonald* does not apply outside of the Fourteenth Amendment context........................................................... 18

        2.    Even if *McDonald* did apply outside of the Fourteenth Amendment context, its logic would support Plaintiffs ........... 19

        3.    Precedent rejects *Tully I*'s interpretation................................. 20

III.    Indiana's Laws Abridge Younger Voters' Rights On Account Of Age ........... 23

IV.    Indiana's Laws Implicate The Twenty-Sixth Amendment's Values............. 27

V.    The Law-of-the-Case Doctrine Is Inapplicable ................................................. 28

    A.    *Tully I*'s preliminary ruling is not law of the case ............................. 28

    B.    Even if *Tully I* were law of the case, the Court should revisit its reading of *McDonald* ............................................................ 30

        1.    Intervening authority has called *Tully I* into question............. 31

        2.    *Tully I*'s interpretation is erroneous and of great practical significance........................................................................ 33

CONCLUSION................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. State Bd. of Elections,*
    393 U.S. 544 (1969) ................................................................ 15

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) ........................................................ 9, 23

*Boyer v. BNSF Ry.,*
    824 F.3d 694 (7th Cir. 2016) ................................................ 31

*Breedlove v. Suttles,*
    302 U.S. 277 (1937), *overruled on other grounds by Harper v. Va.*
    *State Bd. of Elections,* 383 U.S. 663 (1966) ............................ 11

*Brnovich v. Democratic National Committee,*
    141 S. Ct. 2321 (2021) ..................................................*passim*

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800 (1988) ............................................................ 31

*City of Mobile v. Bolden,*
    446 U.S. 55 (1980) .............................................................. 14

*Colo. Project-Common Cause v. Anderson,*
    495 P.2d 220 (Colo. 1972) .................................................. 22

*Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n,*
    447 U.S. 530 (1980) ............................................................ 14

*Curtis v. Thompson,*
    840 F.2d 1291 (7th Cir. 1988) ............................................ 30

*Davis v. Guam,*
    932 F.3d 822 (9th Cir. 2019) .......................................... 15, 27

*Devines v. Maier,*
    728 F.2d 876 (7th Cir. 1984) .............................................. 34

*Donohoe v. Consol. Operating & Prod. Corp.,*
    30 F.3d 907 (7th Cir. 1994) ................................................ 34

*Graves v. Eubank*,
    87 So. 587 (Ala. 1921) ............................................................ 28

*Guinn v. United States*,
    238 U.S. 347 (1915) ................................................................ 27

*Harman v. Forssenius*,
    380 U.S. 528 (1965) ........................................... 14, 26, 27, 28

*Holcomb v. Freedman Anselmo Lindberg, LLC*,
    900 F.3d 990 (7th Cir. 2018) .................................................. 7

*Jolicoeur v. Mihaly*,
    488 P.2d 1 (Cal. 1971) .......................................................... 22

*Kathrein v City of Evanston*,
    752 F.3d 680 (7th Cir. 2014) .......................................... 31, 33

*Lane v. Wilson*,
    307 U.S. 268 (1939) ......................................................... 13, 26

*Lassiter v. Northampton Cnty. Bd. of Elections*,
    360 U.S. 45 (1959) ................................................................ 19

*League of Women Voters of Fla., Inc. v. Lee*,
    566 F. Supp. 3d 1238 (N.D. Fla. 2021) ............................... 23

*Leser v. Garnett*,
    258 U.S. 130 (1922) .............................................................. 11

*Lubin v. Panish*,
    415 U.S. 709 (1974) .............................................................. 15

*Luft v. Evers*,
    963 F.3d 665 (7th Cir. 2020) .......................................... 24, 25

*McDonald v. Board of Election Comm'rs of Chi.*,
    394 U.S. 802 (1969) ......................................................*passim*

*Morissette v. United States*,
    342 U.S. 246 (1952) .............................................................. 11

*Obama for America v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ................................................ 23

*Ohio State Conference of NAACP v. Husted*,
  768 F.3d 524 (6th Cir. 2014), *vacated on other grounds*, 2014 WL
  10384647 (6th Cir. Oct. 2, 2014) ................................................................. 23, 25

*Oregon v. Mitchell*,
  400 U.S. 112 (1970) ..................................................................... 8, 16, 17

*Pearson v. Thompson*,
  955 F.2d 46 (7th Cir. 1992) (tbl.), 1992 WL 25349 ............................. 30

*Pennsylvania Dep't of Corr. v. Yesky*,
  524 U.S. 206 (1998) .............................................................................. 9

*Pitt News v. Pappert*,
  379 F.3d 96 (3d Cir. 2004) .................................................................. 30

*Price v. N.Y. State Board of Elections*,
  540 F.3d 101 (2d Cir. 2008) ............................................................... 23

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) ................................................................................ 29

*Reno v. Bossier Parish School*,
  528 U.S. 320 (2000) ...................................................................... 24, 25

*Reynolds v. Sims*,
  377 U.S. 533 (1964) ....................................................................... 14, 34

*Rice v. Cayetano*,
  528 U.S. 495 (2000) ................................................................ 10, 19, 27

*Shelby County v. Holder*,
  570 U.S. 529 (2013) ............................................................................ 26

*Sherley v. Sebelius*,
  689 F.3d 776, 782 (D.C. Cir. 2012) ................................................... 29

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
  574 F. Supp. 3d 1260 (N.D. Ga. 2021) .............................................. 23

*Smith v. Meese*,
  821 F.2d 1484 (11th Cir. 1987) ......................................................... 20

*South Carolina v. Katzenbach*,
  383 U.S. 301 (1966) ............................................................................ 14

*Texas Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ........................................................... 21, 22

*Texas Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ..................................................... 21, 22, 25

*Tice v. American Airlines, Inc.,*
    373 F.3d 851 (7th Cir. 2004) ................................................................. 31

*Tully v. Okeson,*
    141 S. Ct. 2798 (2021) .............................................................................. 4

*Tully v. Okeson,*
    2022 WL 4552513 (S.D. Ind. Sept. 29, 2022) ........................................ 5

*Tully v. Okeson,*
    481 F. Supp. 3d 816 (S.D. Ind. 2020) .............................................. 3, 29

*Tully v. Okeson,*
    977 F.3d 608 (7th Cir. 2020) .........................................................*passim*

*United Jewish Orgs. of Williamsburgh, Inc. v. Wilson,*
    510 F.2d 512 (2d Cir. 1975), *aff'd*, 430 U.S. 144 (1977) ..................... 10

*United States v. Habig,*
    474 F.2d 57 (7th Cir. 1973) .................................................................. 34

*United States v. Holloway,*
    630 F.3d 252 (1st Cir. 2011) ................................................................. 33

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993) ................................................................................. 19

*United States v. Mississippi,*
    380 U.S. 128 (1965) ............................................................................... 13

*United States v. Texas,*
    445 F. Supp. 1245 (S.D. Tex. 1978), *aff'd sub nom. Symm v. United
    States*, 439 U.S. 1105 (1979) ............................................................... 16

*United States v. Van Alstyne,*
    584 F.3d 803 (9th Cir. 2009) ................................................................ 33

*Univ. of Texas v. Camenisch,*
    451 U.S. 390 (1981) ............................................................................... 28

*Walgren v. Bd. of Selectmen of Town of Amherst,*
    519 F.2d 1364 (1st Cir. 1975)................................................... 19

*Walgren v. Howes,*
    482 F.2d 95 (1st Cir. 1973)............................................... 20, 23

*Worden v. Mercer County Bd. of Elections,*
    294 A.2d 233 (N.J. 1972) ..................................................... 15

## Statutes and Constitutional Provisions

52 U.S.C. § 10301......................................................................... 31

52 U.S.C. § 10502......................................................................... 16

Ind. Code § 3-5-2-16.5 ................................................................. 2

Ind. Code § 3-11.5-4-20 .............................................................. 14

Ind. Code § 3-11-8-2 ..................................................................... 1

Ind. Code § 3-11-10-24 ................................................................. 2

Ind. Code § 3-11-18.1 .................................................................... 1

Ky. Rev. Stat. § 117.085 .............................................................. 2

La. Stat. § 18:1303 ....................................................................... 2

Miss. Code § 23-15-715 ............................................................... 2

S.C. Code § 7-15-320 ................................................................... 2

Tenn. Code § 2-6-201 .................................................................. 2

Tex. Elec. Code § 82.003 ............................................................. 2

Voting Rights Act Amendments of 1970, Pub. L. No. 91-285,
    84 Stat. 314........................................................................ 9, 16

U.S. Const. amend. XV, § 1 ....................................................... 10

U.S. Const. amend. XIX, § 1 ...................................................... 11

U.S. Const. amend. XXVI, § 1 .................................................. 7, 9

W. Va. Code § 3-3-1..................................................................... 2

## Other Authorities

116 Cong. Rec. 6013 (Mar. 4, 1970)................................................................. 16

116 Cong. Rec. 6990 (Mar. 11, 1970)............................................................... 16

117 Cong. Rec. 7532-7533 (Mar. 23, 1971) ............................................... 12, 15

Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747 (1999) ............................ 11

Eric S. Fish, *The Twenty-Sixth Amendment Enforcement Power*,
    121 Yale L.J. 1168 (2012)......................................................................... 10

H.R.J. Res. 1, 66th Cong., 41 Stat. 362 (1919) ......................................... 11

H.R. Rep. No. 97-227 (1981) ......................................................... 18, 32

S. Rep. No. 92-26 (1971), 1971 U.S.C.C.A.N. 931.................................. 12, 16

S. Rep. No. 97-417 (1982) .................................................................. 17

State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail
    and Other Voting at Home Options* (July 12, 2022) ................................. 2

Webster's New International Dictionary (2d ed. 1959)................................. 23

William Baude, *The Real Enemies of Democracy*, 109 Cal. L. Rev. 2407
    (2021) ......................................................................................... 19

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs alleged violations of the Twenty-Sixth Amendment to the United States Constitution. Dkt. 6.[1] This Court has jurisdiction under 28 U.S.C. § 1291 because Plaintiffs timely filed a notice of appeal within 30 days of the entry of final judgment. SA1; Dkt. 137. *See* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED

Indiana's election laws draw a facial distinction between voters based on age: voters 65 years of age and older are categorically permitted to vote absentee by mail; voters younger than 65 years of age cannot do so without certifying that they meet another enumerated basis. Ind. Code. §§ 3-5-2-16.5, 3-11-10-24(a). The question presented is whether this disparate treatment of older and younger voters violates the Twenty-Sixth Amendment by abridging the right to vote on account of age.

## STATEMENT OF THE CASE

Indiana allows registered voters to cast in-person ballots on election day, typically in a voter's precinct of residence or in some cases at a county vote center. Ind. Code §§ 3-11-8-2, 3-11-18.1. Indiana also allows registered voters to vote absentee in the period ahead of the election. Absentee voters may return their ballots to the county clerk's office or, if approved, at a satellite voting site. *Id*. §§ 3-11-10-1, 3-11-26, and 3-11-26.3. But only voters in certain categories are permitted to return their absentee ballots by mail. *Id*. § 3-11-10-24(a).

---

[1] Standalone "Dkt. __" citations are to the district court docket, No. 20-cv-1271 (S.D. Ind.). "SA__" citations refer to the required short appendix attached to this brief.

Among those voters entitled to vote absentee by mail under Indiana law are "elderly voter[s]," defined to include all voters who are 65 years of age or older. Ind. Code §§ 3-11-10-24(a)(5), 3-5-2-16.5. On the basis of their age, these voters, unlike similarly situated younger voters, can cast a mail-in ballot without any further "excuse." Indiana is one of a small number of states that use age in this way. The majority of states allow all voters to vote by mail—whether by conducting all-mail elections or letting voters cast a mail-in ballot regardless of age (35 states plus the District of Columbia)—or do not treat age as a relevant criterion (7 states plus Puerto Rico and the U.S. Virgin Islands). Only Kentucky, Louisiana, Mississippi, South Carolina, Tennessee, Texas, and West Virginia recognize a similar age-based excuse to vote absentee by mail.[2] *See generally* Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail and Other Voting at Home Options*, tbl. 1–tbl. 2 (July 12, 2022), https://bit.ly/3dh59ks (last visited Nov. 28, 2022).

A.    **Preliminary injunction proceedings.**

Plaintiffs filed this case on April 29, 2020, shortly after the COVID-19 pandemic upended the voting process for countless Hoosiers. In March 2020, the Indiana Election Commission issued an order providing for no-excuse absentee mail-in voting for *all* Indiana voters in the 2020 primary election, regardless of age. Dkt. 53-8, IEC No. 2020-37. The Commission did not make similar accommodations for the general election or future elections, however. In the operative complaint, filed

---

[2] *See* Ky. Rev. Stat. § 117.085(1)(h)(8); La. Stat. § 18:1303(J); Miss. Code § 23-15-715(b); S.C. Code § 7-15-320(B)(2); Tenn. Code § 2-6-201(5)(A); Tex. Elec. Code § 82.003; W. Va. Code § 3-3-1(b)(1)(B).

on May 4, 2020, Plaintiffs contended that the Commission's refusal to let voters under age 65 vote by mail on equal terms as voters age 65 or older violated the Fourteenth Amendment to the U.S. Constitution, by creating an undue burden on the right to vote during the pandemic; the Twenty-Sixth Amendment to the U.S. Constitution, by abridging the rights of voters based on age; and the Indiana Constitution. Dkt. 6.[3]

In order to obtain relief before the general election, Plaintiffs promptly filed a motion for a preliminary injunction on their federal claims. Dkt. 13. On August 21, 2020, the district court denied that motion, finding that Plaintiffs were not likely to prevail on their federal claims. *Tully v. Okeson*, 481 F. Supp. 3d 816 (S.D. Ind. 2020). With the general election just a few months away, Plaintiffs immediately filed an appeal. *Tully v. Okeson*, No. 20-2605 (7th Cir. docketed Aug. 24, 2020). The next day, Plaintiffs filed an opening brief and a motion to expedite. No. 20-2605 (7th Cir.), Dkt. 13 & Dkt. 15. This Court expedited the briefing schedule, with Plaintiffs' reply due September 16, approximately three weeks later. No. 20-2605 (7th Cir.), Dkt. 16.

On October 6, 2020, this Court affirmed the district court's denial of the preliminary injunction motion. *Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020) ("*Tully I*"). Two members of the panel concluded that Plaintiffs had not made a strong showing on their Twenty-Sixth Amendment claim because, under the majority's reading of *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), "the fundamental right to vote does not extend to a claimed right to cast an absentee ballot by mail." 977 F.3d at 611 (Kanne & Scudder, JJ.). As the majority

---

[3] Plaintiffs voluntarily dismissed their Fourteenth Amendment claim and state law claim after the general election. Dkt. 99.

later stated, the Twenty-Sixth Amendment protected the "right to vote," rather than the "right to an absentee ballot," and therefore a "claim under the Twenty-Sixth Amendment, which only protects the right to vote, is unlikely to succeed." *Id*. at 614 (quoting *McDonald*, 394 U.S. at 807).[4]

The panel's third member, Judge Ripple, wrote separately and disagreed with the majority's interpretation of *McDonald*. As Judge Ripple explained, *McDonald* "antedates the ratification" of the Twenty-Sixth Amendment and at some point "may well . . . have to yield" to the Twenty-Sixth Amendment's command. *Tully I*, 977 F.3d at 619. For preliminary injunction purposes, however, he thought the claim was "weak" because he viewed the challenged law as a "special accommodation" for elderly voters that "employ[ed] age only in a tangential way." *Id*.

Plaintiffs sought Supreme Court review of the preliminary-injunction ruling, but the Supreme Court denied the petition for certiorari. *Tully v. Okeson*, 141 S. Ct. 2798 (2021). Proceedings were stayed while the petition was pending. Dkt. 97.

## B.   Summary judgment proceedings.

After the Supreme Court denied the certiorari petition, Defendants requested an opportunity to conduct discovery. Dkt. 108. The parties then filed cross-motions for summary judgment on the Twenty-Sixth Amendment claim. Dkt. 112; Dkt. 117. In response, the district court denied Plaintiffs' motion and granted Defendants'

---

[4] The panel followed similar reasoning to conclude that Plaintiffs were not entitled to a preliminary injunction on their Fourteenth Amendment claim. *Tully I*, 977 F.3d at 615-18. That claim, which was tied to the burdens associated with in-person voting during a pandemic, is no longer at issue in this litigation. Plaintiffs voluntarily dismissed the Fourteenth Amendment and Indiana state law claim following the conclusion of the preliminary injunction appeals. Dkt. 99.

cross-motion. *See Tully v. Okeson*, 2022 WL 4552513 (S.D. Ind. Sept. 29, 2022). The sole basis for this conclusion was this Court's preliminary-injunction analysis.

Ironically, the opening brief in support of Defendants' cross-motion paid little attention to *Tully I*, and gave no indication that Defendants viewed the preliminary injunction decision as binding law of the case. Dkt. 118. In their reply, however, Defendants shifted gears and argued that *Tully I* was not only persuasive but foreclosed consideration of Plaintiffs' arguments as a matter of law. Dkt. 131. Recognizing that Defendants "did not explicitly raise the law of the case doctrine until their reply brief," the district court nonetheless concluded that *Tully I* was "precedent to be followed as law of the case" unless and until this Court reconsidered its position. SA9-14 & nn. 4 & 7. Considering itself bound this Court's preliminary analysis, the district court entered judgment in favor of Defendants. SA1. This appeal followed.

## SUMMARY OF ARGUMENT

Indiana violates the Twenty-Sixth Amendment by giving only voters 65 years of age and older the right to cast an absentee ballot by mail. This *abridges* younger voters' rights because younger voters have fewer options to cast a ballot than older voters. It affects the *right to vote* because the Twenty-Sixth Amendment extends to all aspects of voting and the procedures necessary to make that right effective. And it does these things *on account of age* because it facially discriminates between otherwise identically situated voters based on a protected characteristic. Whether a law may be said to discriminate on the basis of age "in a tangential way" is immaterial for purposes of the analysis under the Twenty-Sixth Amendment.

This conclusion follows directly from the text, history, and structure of the Twenty-Sixth Amendment, as well as the Constitution's other Voting Amendments (the Fifteenth, Nineteenth, and Twenty-Fourth Amendments) and the Voting Rights Act ("VRA"). The district court did not reach these arguments because it thought that *Tully I* foreclosed them. But this Court should reverse the judgment below.

To begin, *Tully I* did not address the abundant historical and textual evidence showing that the Voting Amendments and the VRA, not *McDonald*'s Fourteenth Amendment analysis, provide the appropriate framework for interpreting the Twenty-Sixth Amendment. The panel's extension of *McDonald* to this materially different context also contradicts the logic of the *McDonald* decision. Finally, the majority's interpretation of *McDonald* has been rejected by numerous courts even as applied to the Fourteenth Amendment. Simply put, the preliminary injunction panel began from the wrong premise and reached the wrong result.

*Tully I*'s discussion of *McDonald* is also not binding. Previously, this Court held only that Plaintiffs had not shown a strong likelihood of success on the merits of their claims, and it did so on an emergency briefing schedule, early in the pandemic and with the 2020 general election rapidly approaching. Thus, the district court did not have to follow that preliminary interpretation at summary judgment—and more importantly, *this* Court is not bound by that interpretation on appeal. Because the *Tully I* panel addressed the Twenty-Sixth Amendment claim on an appeal from a preliminary injunction, and under unusual pressure to reach a decision in advance of the general election, *Tully I* is entitled to consideration but is not law of the case.

That said, even if *Tully I*'s analysis *were* law of the case, there are two independent reasons why that would not bind the Court here. First, *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021), fatally undermines the *Tully I* majority's assumption that laws affecting mail-in voting are not part of the "right to vote" protected by the Voting Amendments. Second, for the reasons discussed above, the majority's extension of *McDonald* into the Twenty-Sixth Amendment context is incorrect. The law-of-the-case doctrine is prudential, and does not prevent this Court from correcting this significant misinterpretation.

In sum, this Court can and should hold that a state may not facially discriminate when it comes to absentee voting on the basis of age, just as a state may not facially discriminate when it comes to absentee voting (or any other aspect of voting) on the basis of race or sex. Indiana's election laws violate this guarantee, so the judgment of the district court should be reversed.

## STANDARD OF REVIEW

This Court reviews the district court's decision on the cross-motions for summary judgment de novo. *Holcomb v. Freedman Anselmo Lindberg, LLC*, 900 F.3d 990, 992 (7th Cir. 2018).

## ARGUMENT

The Twenty-Sixth Amendment, ratified in July 1971, provides that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend. XXVI, § 1. As shown below, Indiana's absentee voting laws violate

the Twenty-Sixth Amendment because they abridge the rights of younger voters, relative to voters 65 years or older, solely on account of age.

## I.     The Twenty-Sixth Amendment Does Not Just Lower The Voting Age.

Defendants argued in support of their cross-motion for summary judgment that a Twenty-Sixth Amendment claim fails because that Amendment was "originally understood simply to secure the right to vote for all citizens age 18 and older." Dkt. 118 at 5-10. Defendants made the same argument in *Tully I*, but neither this Court nor the district court reached the issue. As Defendants presumably will renew their argument in this Court, Plaintiffs briefly explain why the effect of the Twenty-Sixth Amendment cannot be limited to this original "understanding."

Congress passed the Twenty-Sixth Amendment in the wake of the Supreme Court's fractured decision in *Oregon v. Mitchell*, 400 U.S. 112 (1970), holding that Title III of the Voting Rights Act Amendments of 1970, in which Congress sought to lower the voting age to 18 in state and local elections, was unconstitutional. The Twenty-Sixth Amendment overrode this aspect of the Supreme Court's decision.[5] Defendants argue that because *Mitchell* motivated the enactment of the Twenty-Sixth Amendment, the Twenty-Sixth Amendment did no more than lower the voting age to 18. But this reasoning fails as a matter of law.

Defendants' argument confuses the original expected *application* of a legal enactment with the scope of the enactment's *protections*. The former is a historical question that depends on the mischief that motivated the law's enactment; the latter

---

[5] As discussed below, *Mitchell* upheld other aspects of the 1970 Amendments, including a provision addressing absentee voting in presidential elections. *See infra* p. 16.

is a legal question that depends, in the first instance, on the law's text. As the Supreme Court has put it, federal courts cannot disregard the plain meaning of an antidiscrimination law just because its application in a given case "reaches 'beyond the principal evil' legislators may have intended or expected to address." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020). "Only the written word is the law, and all persons are entitled to its benefit." *Id*. at 1737; *see also Pennsylvania Dep't of Corr. v. Yesky*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'").

The Twenty-Sixth Amendment prohibits states from denying the right to vote to voters age 18 or older and thus has the effect of invalidating state laws that set a minimum voting age of 21 years. But on its face, the text of the Amendment is not limited to this effect. Instead, the Twenty-Sixth Amendment prohibits *all* denials or abridgments of the right to vote on account of age (for voters 18 years of age or older).

Comparing the Twenty-Sixth Amendment to the 1970 VRA Amendments makes the former's breadth even more clear. The 1970 VRA Amendments prohibited only the "denial" of the right to vote. By contrast, the Twenty-Sixth Amendment prohibits both the denial *and* the abridgment of the right to vote based on age.[6] This

---

[6] *Compare* Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, § 302, 84 Stat. 314, 318 ("Except as required by the Constitution, no citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any primary or in any election shall be denied the right to vote in any such primary or election on account of age if such citizen is eighteen years of age or older."), *with* U.S. Const. amend. XXVI, § 1 ("The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age.").

demonstrates that the Twenty-Sixth Amendment sweeps more broadly than the 1970 Amendments. For instance, because of the broader "abridgment" language, a state would violate the Twenty-Sixth Amendment if its voting laws merely burdened the rights of younger voters, even if those voters were still able to cast a ballot in other ways. *See* Eric S. Fish, *The Twenty-Sixth Amendment Enforcement Power*, 121 Yale L.J. 1168, 1173 (2012) ("[t]he addition of 'or abridged' to the Amendment signals Congress's intention that the Twenty-Sixth Amendment empower it to do more than just police states' voting ages").

Defendants' argument also runs straight into binding authority with respect to the other Voting Amendments. The Fifteenth Amendment, for example, provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1. While the "immediate concern" of the Fifteenth Amendment was "to guarantee to the emancipated slaves the right to vote," Congress used language that "goes beyond" this objective—the Amendment is "cast in fundamental terms" and "transcend[s] the particular controversy which was the immediate impetus for its enactment." *Rice v. Cayetano,* 528 U.S. 495, 512 (2000); *see also United Jewish Orgs. of Williamsburgh, Inc. v. Wilson*, 510 F.2d 512, 521–22 (2d Cir. 1975) ("There is no reason, as we see it, that a white voter may not have standing, just as a nonwhite voter, to allege . . . an abridgement of his right to vote on account of race or color . . . regardless of the fact that the fourteenth and fifteenth amendments

were adopted for the purpose of ensuring equal protection to the black person."), *aff'd*, 430 U.S. 144 (1977).

Similarly, the Nineteenth Amendment provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex." U.S. Const. amend. XIX, § 1. The immediate purpose of the Nineteenth Amendment was to "extend[] the right of suffrage to women." H.R.J. Res. 1, 66th Cong., 41 Stat. 362 (1919). But, like the Fifteenth Amendment, the Nineteenth Amendment is not limited to that purpose, and its language "applies to men and women alike." *Breedlove v. Suttles*, 302 U.S. 277, 283 (1937), *overruled on other grounds by Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 668-69 (1966).

"[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also Leser v. Garnett*, 258 U.S. 130, 136 (1922) (observing that the Nineteenth Amendment "is in character and phraseology precisely similar to the Fifteenth"); Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747, 789 (1999) ("On no less than four occasions—the Fifteenth, Nineteenth, Twenty-Fourth and Twenty-Sixth Amendments—the Constitution uses the same highly elaborate set of words, 'the right of citizens of the United States . . . to vote,' and an intratextualist would be inclined to read these provisions *in pari materia*."). The use of identical language

("denied or abridged . . . on account of . . . age") to address identical subject matter (the "right . . . to vote") in the Twenty-Sixth Amendment unmistakably indicates that its prohibition on age discrimination should be interpreted and applied similarly to the other Voting Amendments' prohibitions on race, sex, and poll-tax discrimination, which are not limited to the "mischiefs" motivating their enactment.

The Senate Report accompanying the Twenty-Sixth Amendment underscores the point. *See* S. Rep. No. 92-26 at 2 (1971), 1971 U.S.C.C.A.N. 931, 931 (stating that the proposed Amendment "embodies the language and formulation of the 19th amendment, which enfranchised women, and that of the 15th amendment, which forbade racial discrimination at the polls"). So do floor statements by the Twenty-Sixth Amendment's supports. Proponents of the Twenty-Sixth Amendment explicitly emphasized the parallels between the Twenty-Sixth Amendment and the Constitution's other Voting Amendments in the run-up to the Amendment's passage. Representative Celler, the Twenty-Sixth Amendment's primary advocate in the House of Representatives, stated that the proposed amendment "is modeled after similar provisions in the 15th amendment, which outlawed racial discrimination at the polls, and the 19th amendment, which enfranchised women." 117 Cong. Rec. 7532-7533 (Mar. 23, 1971). Representative Pepper agreed, declaring that "[w]hat we propose to do . . . is exactly what we did" in "the 15th amendment and . . . the 19th amendment." *Id*. at 7539. And Representative Poff explained that "[j]ust as the 15th amendment prohibits racial discrimination in voting and just as the 19th amendment prohibits sex discrimination in voting, the proposed amendment would prohibit age

discrimination in voting." *Id.* at 7534. "In this regard," he continued, "the proposed amendment would protect not only an 18-year old, but also the 88-year old." *Id*.

## II.    Absentee Voting Is Part Of The "Right To Vote."

Having established that the Twenty-Sixth Amendment protects the rights of all voters 18 or older, and does not merely lower the voting age to 18, the next question is whether Indiana's absentee voting laws affect the "right to vote." As discussed below, text, history, and precedent show that they do.

In *Tully I*, the Court did not address these arguments because the majority concluded that a Fourteenth Amendment equal protection case pre-dating the Twenty-Sixth Amendment's enactment, *McDonald v. Board of Election Commissioners of Chicago*, rendered Plaintiffs' Twenty-Sixth Amendment claim unlikely to succeed. As explained below, that interpretation of *McDonald* was erroneous and contrary to the clear historical and textual evidence that absentee voting is protected under Twenty-Sixth Amendment. Accordingly, Plaintiffs are entitled to summary judgment on this element of their claim.

### A.    The Twenty-Sixth Amendment's text covers absentee voting.

In deciding whether the Twenty-Sixth Amendment applies to absentee voting, one should begin with the text. Unlike the Equal Protection Clause of the Fourteenth Amendment, which does not mention voting, the Twenty-Sixth Amendment and the other Voting Amendments specifically reference the right to vote using "plain, unambiguous language." *United States v. Mississippi,* 380 U.S. 128, 140 (1965). This plain language has been understood to "secure[] freedom from discrimination" in all "matters affecting the franchise." *Lane v. Wilson*, 307 U.S. 268, 274 (1939); *see also*

*City of Mobile v. Bolden*, 446 U.S. 55, 61 (1980) (the Fifteenth Amendment "forbids" racial discrimination "in matters having to do with voting"); *South Carolina v. Katzenbach*, 383 U.S. 301, 325 (1966) (the Fifteenth Amendment "invalidate[s] state voting qualifications or procedures which are discriminatory on their face"); *Harman v. Forssenius*, 380 U.S. 528, 540-41 (1965) ("like the Fifteenth Amendment, the Twenty-fourth 'nullifies sophisticated as well as simple-minded modes' of impairing the right guaranteed'"). It follows that absentee voting, like any other matter having to do with voting, falls within the scope of the Voting Amendments' guarantee.

This is consistent with ordinary meaning. An individual who casts an absentee ballot is engaged in "voting" under the common understanding of that term. *Cf.* Ind. Code § 3-11.5-4-20 (noting that a voter who "has marked and returned an absentee ballot" "may not vote in person" at a precinct). Indeed, in an implied analogy to traditional First Amendment standards, the Supreme Court has described laws governing absentee voting as "time, place, or manner voting rules." *Brnovich*, 141 S. Ct. at 2333. Time, place or manner rules governing speech do not fall outside the scope of the First Amendment merely because there may be alternative channels for that expression. *E.g.*, *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 536-37 (1980). Rules governing absentee voting should be treated similarly.

Excluding absentee voting from the "right to vote" is also inconsistent with first principles. As the Supreme Court has recognized, "history has seen a continuing expansion of the scope of the right of suffrage." *Reynolds v. Sims*, 377 U.S. 533, 555 & n.28 (1964). Like the other Voting Amendments, therefore, the Twenty-Sixth

Amendment reflects "an increasing pressure for broader access to the ballot." *Lubin v. Panish*, 415 U.S. 709, 713 (1974). It "clearly evidences the purpose not only of extending the voting right to younger voters but also of encouraging their participation by the elimination of all unnecessary burdens and barriers." *Worden v. Mercer County Bd. of Elections*, 294 A.2d 233, 237 (N.J. 1972). Given the core purpose of the Voting Amendments, "where there is any doubt" about an Amendment's boundary, courts should "err on the side of inclusiveness." *Davis v. Guam*, 932 F.3d 822, 830 (9th Cir. 2019).

### B.    History and context support this interpretation.

Legislative history also supports an expansive interpretation of the Twenty-Sixth Amendment's "right to vote." When Representative Celler introduced the Twenty-Sixth Amendment in the House of Representatives, he stated that it "contemplates that the term 'vote' includes all action necessary to make a vote effective . . . including, but not limited to, registration or other action required by law prerequisite to voting [or] casting a ballot." 117 Cong. Rec. 7533 (Mar. 23, 1971). The VRA used the very same definition, *see* Pub. L. No. 89-110, § 14(c)(1), 79 Stat. 437, 445 (1965), reflecting "an intention to give the Act the *broadest possible* scope." *Allen v. State Bd. of Elections*, 393 U.S. 544, 566-67 (1969) (emphasis added).

The Senate Report accompanying the Twenty-Sixth Amendment also underscored the breadth of the "right to vote." As that document indicated, the proposed amendment would not merely protect the ability to *cast* a ballot, but also ensure that younger voters could participate in the electoral process on the same terms as other voters. Again echoing the VRA, the Report recognized that "forc[ing]

younger voters to go to greater pains in order to exercise their right to vote" than older voters "is at least inconsistent with the purpose of the Voting Rights Act, which sought to encourage greater political participation on the part of the young." S. Rep. No. 92-26 at 14, 1971 U.S.C.C.A.N. 931, 944; *see also United States v. Texas*, 445 F. Supp. 1245, 1254 (S.D. Tex. 1978), *aff'd sub nom. Symm v. United States*, 439 U.S. 1105 (1979).

The 1970 Amendments to the VRA provide more evidence in Plaintiffs' favor. In addition to lowering the voting age in national, state, and local elections, the 1970 VRA Amendments created "uniform national rules for absentee voting in presidential and vice-presidential elections." *Mitchell*, 400 U.S. at 134 (Black, J.); *see* 52 U.S.C. § 10502(b) & (c). In fact, using the same "denies or abridges" language that would later be repeated in the Twenty-Sixth Amendment, Congress recognized that "the lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections . . . denies or abridges the inherent constitutional right of citizens to vote for their President and Vice President." Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, § 202(a)(1), 84 Stat. 314, 316 (codified at 52 U.S.C. § 10502(a)(1)).[7]

---

[7] Legislative history is also instructive. Senator Barry Goldwater, who proposed adding the absentee-balloting provisions to the 1970 VRA Amendments, explicitly linked that proposal with the expansion of voting rights based on age. As he explained, an "important facet" of his proposal was that "once the voting age is reduced to 18" by the 1970 VRA, the benefits of absentee voting "will be immediately available to all our young Americans who are attending college away from their homes." 116 Cong. Rec. 6990 (Mar. 11, 1970). Another Senator praised the Goldwater amendment's "fundamental purpose" of "strip[ping] conditions to full participation in the electoral process" to achieve "the guarantee of the 15th Amendment to the Constitution that the right to vote shall not be denied on account of race or color." 116 Cong. Rec. 6013 (Mar. 4, 1970) (statement of Sen. Baker).

There is no indication that the Twenty-Sixth Amendment somehow severed the link between the availability of absentee voting and the "right . . . to vote" that Congress had recognized just one year earlier in the VRA. To the contrary, in *Mitchell*, the Supreme Court *upheld* the VRA's absentee-voting provisions, calling them a constitutional exercise of Congress's authority "to insure a fully effective voice to all citizens in national elections." *Mitchell*, 400 U.S. at 118, 134 (Black, J.); *see also id*. at 236-37 (Brennan, Marshall, & White, JJ., concurring in part); *id*. at 147-48 (Douglas, J., concurring in part). In passing the Twenty-Sixth Amendment, Congress had every reason to believe that courts would interpret the new amendment to include all aspects of voting necessary to assure full and equal participation in the electoral process—including absentee voting.

The 1982 Amendments to the VRA further confirm that the "right to vote" includes absentee voting. The Senate Report accompanying those changes explained that the Senate viewed Section 2 of the VRA as prohibiting all practices that "result in the denial of equal access to *any phase* of the electoral process for minority group members." S. Rep. No. 97-417 at 30 (1982) (emphasis added). Indeed, the Senate Report specifically identified a 1968 court decision that had found a Section 2 violation where parish clerks had failed to make absentee ballots available to black voters on the same terms as white voters. *Id*. at 30 n.119 (citing *Brown v. Post*, 279 F. Supp. 60, 63-64 (W.D. La. 1968)). The House Report similarly recognized that a Section 2 violation "would be proved by showing that election officials made absentee ballots available to white citizens *without a corresponding opportunity being given to*

*minority citizens similarly situated.*" H.R. Rep. No. 97-227 at 31 n.105 (1981) (emphasis added). Nothing in the reports suggested a different view of the "right to vote" in prior statutory or constitutional enactments.

### C.    The *McDonald* decision is inapposite.

In *Tully I*, this Court did not address the textual or historical evidence detailed above showing that the "right to vote" as used in the Twenty-Sixth Amendment, other Voting Amendments, and the VRA, encompassed absentee voting. Instead, the majority reasoned that *McDonald*—a Fourteenth Amendment case—appeared to have "answered" whether an "age-based absentee-voting law abridges 'the right . . . to vote' protected by the Twenty Sixth Amendment or merely affects a privilege to vote by mail." 977 F.3d at 613. This reading of *McDonald* is wrong as a matter of law.

### 1.    *McDonald* does not apply outside of the Fourteenth Amendment context.

The first error was to apply *McDonald* to the Twenty-Sixth Amendment at all. *McDonald* was not a Voting Amendments case; it addressed a generic "right to vote" for purposes of a claim arising under the Fourteenth Amendment's Equal Protection Clause. 394 U.S. at 807. Tellingly, *McDonald* did not mention any of the Voting Amendments, let alone the yet-to-be-enacted Twenty-Sixth Amendment. Nothing in the opinion suggests that the Supreme Court's equal-protection analysis was intended to define the "right to vote" that was enumerated elsewhere in the Constitution. *Tully I* concluded otherwise as a provisional matter, but without addressing the VRA analogy or the other historical and textual evidence discussed above. After *Tully I*, moreover, commentators have urged that courts should not

"automatically transpose[]" *McDonald*'s analysis about "the unenumerated right to an absentee ballot" to "a Twenty-[S]ixth Amendment claim." William Baude, *The Real Enemies of Democracy*, 109 Cal. L. Rev. 2407, 2413 & n.39 (2021).

Using *McDonald*'s Fourteenth Amendment analysis to cabin the Twenty-Sixth Amendment also violates the principle that the Constitution's Amendments have "independent meaning and force." *Rice,* 528 U.S. at 522. Put another way, the applicability of one constitutional amendment does not preempt the guarantees of another. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49 (1993). As the Supreme Court held in *Rice*, compliance with the Fourteenth Amendment does not "excuse[]" the need to comply with the Fifteenth Amendment's separate "race neutrality command." 528 U.S. at 522; *see also Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 53 (1959) (voting laws that satisfy the Fourteenth Amendment can still be unconstitutional if they "perpetuate that discrimination which the Fifteenth Amendment was designed to uproot"); *Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364, 1367 (1st Cir. 1975) (it is "difficult to believe" that the Twenty-Sixth Amendment "contributes no added protection to that already offered by the Fourteenth Amendment"). For similar reasons, compliance with *McDonald* is a separate issue from the Twenty-Sixth Amendment.

> **2.    Even if *McDonald* did apply outside of the Fourteenth Amendment context, its logic would support Plaintiffs.**

Even assuming that the discussion in *McDonald* sheds some light on the analysis to be applied to a Twenty-Sixth Amendment claim, the decision's rationale cuts against Defendants.

In the first instance, *McDonald* acknowledged that absentee-ballot rules drawn on the basis of "suspect" classifications would "demand a more exacting judicial scrutiny" than ordinary rational-basis review. 394 U.S. at 807. The Supreme Court declined to apply exacting scrutiny in *McDonald* because "the distinctions made by Illinois' absentee provisions [were] not drawn on the basis" of traditionally suspect classifications. *Id*. As the First Circuit recognized just a few years later, however, the Twenty-Sixth Amendment and the other Voting Amendments "would seem to have made the specially protected groups, at least for voting-related purposes, akin to a 'suspect class.'" *Walgren v. Howes*, 482 F.2d 95, 102 (1st Cir. 1973).

*McDonald* also reasoned that "the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves *deny* appellants the exercise of the franchise." 394 U.S. at 807-08 (emphasis added). Even if that were true, the Twenty-Sixth Amendment and other Voting Amendments do not prohibit only state action that "denies" the right to vote. They also separately prohibit state action that "abridges" the right to vote but falls short of an outright denial, and are thus more expansive than the Equal Protection Clause as construed by the *McDonald* Court. *See supra* pp. 9-10.

### 3.     Precedent rejects *Tully I*'s interpretation.

In addition to ignoring text, history, and the underlying logic of the *McDonald* decision, the *Tully I* majority's view of *McDonald* is at odds with the great weight of authority. The Eleventh Circuit, for example, has squarely held that "[t]he constitutional protection for the right to vote encompasses . . . voting with absentee ballots." *Smith v. Meese*, 821 F.2d 1484, 1490 (11th Cir. 1987).

The majority's own analysis highlights its departure from existing case law. In *Tully I*, the majority cited a Fifth Circuit case for the proposition that "understanding what the right to vote meant at the time the Twenty-Sixth Amendment was ratified in 1971 is certainly assisted by the 1969 *McDonald* decision." 977 F.3d at 613. But the cited Fifth Circuit decision—*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) ("*Texas Democratic Party II*")—ultimately held that *McDonald* did *not* control the Twenty-Sixth Amendment analysis, contrary to this Court's conclusion in *Tully I*. As the Fifth Circuit recognized, *McDonald* "predated the ratification of the Twenty-Sixth Amendment" and thus "did not consider" whether "the Amendment requires the same heightened analysis as *McDonald* stated applied to classifications based on race and wealth." *Texas Democratic Party II*, 978 F.3d at 193. Furthermore, *McDonald* "seemed to analyze only whether the challenged action 'den[ied] appellants the exercise of the franchise,'" whereas the Twenty-Sixth Amendment "prohibits age-based denials but also abridgments of the right to vote." *Id.*

In an earlier opinion in the *Texas Democratic Party* case, addressing a motion to stay pending appeal, the motions panel had surmised that *McDonald*'s "logic" might apply to a Twenty-Sixth Amendment claim challenging a Texas absentee-voting law similar to the Indiana law challenged here. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 408-09 (5th Cir. 2020) ("*Texas Democratic Party I*"). But only one judge fully endorsed this reasoning. A second wrote separately to note that *McDonald* was merely "the closest analogy available under current precedent," even though "it would presumably run afoul of the Constitution to allow only voters of a

-21-

particular race to vote by mail," *id*. at 416 (Ho., J., concurring), and a third would have abstained from deciding any constitutional questions under the *Pullman* doctrine. *Id*. at 417 (Costa, J., concurring). Regardless, *Texas Democratic Party II* unequivocally abrogated the motion panel's splintered discussion of *McDonald*, holding that *Texas Democratic Party I* is not precedent. As the merits panel stated, "[w]e have uncertainties about *McDonald* and do not wish that the earlier necessity for a preliminary decision on the merits by the motions panel control the remand on an issue we never reached." *Texas Democratic Party II*, 978 F.3d at 193-94; *see also id*. at 199 (Stewart, J., concurring in part and dissenting in part) ("I am unpersuaded that *McDonald* controls the outcome of this case.").

Several state high courts are in accord. The California Supreme Court has held that the Twenty-Sixth Amendment invalidates voting restrictions if "[t]he burden placed on youth would be different than that placed on other absentee voters." *Jolicoeur v. Mihaly*, 488 P.2d 1, 4 (Cal. 1971). That is so even if voters may "travel to their parents' district to register and vote" or may "register and vote as absentees." *Id*. Likewise, the Colorado Supreme Court has stated that "the prohibition against denying the right to vote to anyone eighteen years or older by reason of age applies to the *entire process* involving the exercise of the ballot and its concomitants." *Colo. Project-Common Cause v. Anderson*, 495 P.2d 220, 223 (Colo. 1972) (en banc) (emphasis added).

Finally, even in the Fourteenth Amendment context, many courts have refused to interpret *McDonald* as foreclosing claims based on absentee voting. It follows *a*

*fortiori* that *McDonald* does not require such a rule for the Twenty-Sixth Amendment. In *Obama for America v. Husted*, for example, the plaintiffs challenged an Ohio law precluding some voters from casting in-person early ballots. 697 F.3d 423 (6th Cir. 2012). The Sixth Circuit held that, under the Fourteenth Amendment, "Plaintiffs [do] not need to show that they were legally prohibited from voting" in other ways to trigger heightened scrutiny. *Id.* at 430-31. As that court later explained, "We did not read *McDonald* to require proof that there was *no* possibility that the plaintiffs would find a way to adjust and vote through the remaining options." *Ohio State Conference of NAACP v. Husted*, 768 F.3d 524, 541 (6th Cir. 2014), *vacated on other grounds*, 2014 WL 10384647 (6th Cir. Oct. 2, 2014).[8]

## III.  Indiana's Laws Abridge Younger Voters' Rights On Account Of Age.

The final aspect of Plaintiffs' Twenty-Sixth Amendment claim concerns abridgment. It is beyond dispute that Indiana's absentee voting laws operate "on account of age." *See Bostock*, 140 S. Ct. at 1739 ("on account of" encompasses the "simple" standard of "but-for causation"); Webster's New International Dictionary (2d ed. 1959) (defining "on account of" as "[f]or the sake of; by reason of; because of"). Defendants have argued that this facially disparate treatment does not *abridge* the right to vote on account of age because allowing older voters to vote by mail does not

---

[8] *See also, e.g.*, *Price v. N.Y. State Board of Elections*, 540 F.3d 101, 109 & n.9 (2d Cir. 2008) (reversing grant of summary judgment to the defendant on a Fourteenth Amendment claim); *Walgren*, 482 F.2d at 99 n.9 (same). Further, since *Tully I*, several district courts have refused to read *McDonald* as "summarily disposing" of voting rights claims based on absentee voting laws. *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1278 (N.D. Ga. 2021); *see also League of Women Voters of Fla., Inc. v. Lee*, 566 F. Supp. 3d 1238, 1259-60 (N.D. Fla. 2021) (concluding that the argument that *McDonald* means that restrictions on mail-in voting "do[] not implicate the right to vote" is "unsound").

make it harder for younger voters to cast a ballot than it would be otherwise. Dkt. 118 at 16-19. This interpretation of "abridgment" misunderstands the meaning of the constitutional text.

The Supreme Court has indicated that the concept of "abridgment" "necessarily entails a comparison." *Reno v. Bossier Parish School*, 528 U.S. 320, 333-34 (2000). An "abridgment" also can occur even where the right to vote is not completely denied. *See Brnovich*, 141 S. Ct. at 2341 ("nobody disputes . . . that an 'abridgment' of the right to vote under § 2 does not require outright denial of the right"); *id*. at 2357 (Kagan, J., dissenting) (similar). The term "abridgment" thus "necessarily means something more subtle and less drastic than the complete denial of the right to cast a ballot." *Bossier Parish*, 528 U.S. at 359 (Souter, J., concurring in part). Compared to the right to vote that Indiana provides to older citizens, the right it provides to younger voters is less robust. Voters under 65 years need a specific excuse to vote by mail, while voters 65 years and older do not, which means that the rights of younger voters are "abridged" on account of age.

This Court has endorsed this very approach to abridgment for purposes Section 2 of the VRA—a provision that "closely track[s] the language of the [Fifteenth] Amendment it was adopted to enforce." *Brnovich*, 141 S. Ct. at 2330-31. As the Court has explained, Section 2 establishes "an equal-treatment requirement" in which the question is whether voters have an equal *opportunity* to participate as other voters under a given election system. *Luft v. Evers*, 963 F.3d 665, 672 (7th Cir. 2020). The Sixth Circuit agrees that to determine whether there has been an abridgment under

Section 2 of the VRA, a court should ask "under the challenged law or practice, how do minorities fare in their ability 'to participate in the political process' *as compared to other groups of voters*?" *Ohio State Conference of NAACP*, 768 F.3d at 556; *see also id*. at 558 ("under the Section 2 analysis, the focus is whether minorities enjoy less opportunity to vote *as compared to other voters*").

In short, under *Bossier Parish* and *Luft*, it does not matter whether a younger voter finds it harder to cast a ballot once a state gives older voters the vote absentee a ballot by mail—it is the denial of equal treatment, not the retrogression of a particular group of voters, that constitutes the unlawful "abridgment." The Fifteenth Amendment's prohibition on the "denial" or "abridgment" of the right to vote has "never been read to refer only to retrogression." *Bossier Parish*, 528 U.S. at 333. Like the other Voting Amendments, it focuses on what "the right to vote *ought to be*" rather than on a particular group's right to vote relative to the status quo. *Id.* at 334.

In *Texas Democratic Party II*, two judges read the term "abridgment" in the Twenty-Sixth Amendment differently, holding that "an election law abridges a person's right to vote for the purposes of the Twenty-Sixth Amendment only if it makes voting *more difficult* for that person than it was before the law was enacted or enforced." 978 F.3d at 190-91. But this improperly imports the retrogression standard from Section 5 of the VRA, which does not apply. In *Bossier Parish*, the Supreme Court read the Fifteenth Amendment *in pari materia* with Section 2 of the VRA, not Section 5, and there is no reason to believe that the Twenty-Sixth Amendment uniquely incorporates Section 5's preclearance standard. *See Texas Democratic Party*

*II*, 978 F.3d at 196 (Stewart, J., concurring in part and dissenting in part) (citing *Bossier Parish* and *Luft* and concluding that "there is little reason to think the term 'abridge' should carry a distinct meaning within the Twenty-Sixth Amendment"). That is particularly true because Section 5 of the VRA was an "extraordinary measure" originally scheduled to expire after just five years. *Shelby County v. Holder*, 570 U.S. 529, 535 (2013).

Interpreting the Twenty-Sixth Amendment to require retrogression of the disfavored group is also inconsistent with earlier precedents that found an abridgment even where no retrogression occurred. In *Lane v. Wilson*, the plaintiffs challenged an Oklahoma voter registration system enacted after the Supreme Court invalidated a literacy test that had effectively denied black citizens the right to vote. Under this new system, voters who cast ballots in the 1914 general election "automatically remained qualified voters," but new voters had to register during a two-week window. 307 U.S. at 271. This grandfather clause did not make it more difficult for black citizens to vote than previously; Oklahoma's unconstitutional literacy requirements had previously prevented many black citizens from voting altogether. Nevertheless, in practice, the scheme made it harder for black voters to register than white voters, and the Supreme Court held that this abridged black voters' rights in violation of the Constitution. *Id*. at 275.

Similarly, in *Harman v. Forssenius*, Virginia replaced a poll-tax requirement for federal elections with a requirement that a voter either pay the tax or file a certificate of residence six months before the election. This change did not make it

more difficult for voters to cast ballots in federal elections. Virginia merely added another option for qualifying to vote. 380 U.S. at 540. Even so, the Supreme Court held that the new law "constitute[d] an abridgment of the right to vote in federal elections in contravention of the Twenty-fourth Amendment." *Id*. at 538. As the Court explained, "[t]he requirement imposed upon those who reject the poll tax method of qualifying would not be saved even if it could be said that it is no more onerous, or even somewhat less onerous, than the poll tax," because the poll tax for federal elections had been "abolished absolutely" as a prerequisite to voting, and "no equivalent or milder substitute may be imposed." *Id*. at 540-42.

## IV. Indiana's Laws Implicate The Twenty-Sixth Amendment's Values.

Judge Ripple affirmed the denial of the preliminary injunction on the ground that the "values" of the Twenty-Sixth Amendment were not "directly implicated" by a law giving only older voters a right to cast absentee ballots. *Tully I*, 977 F.3d at 619 (Ripple J., concurring). But this rationale does not save Indiana's election laws either. When it comes to voting matters, there is no room in text or precedent for drawing lines between "permissible" and "impermissible" classifications based on age, race, or sex. The Voting Amendments "prohibit[] *all provisions* denying or abridging the voting franchise of any citizen or class of citizens" based on the stated criteria, full stop. *Rice*, 528 U.S. at 512 (emphasis added).

This principle is well-recognized with respect to the other Voting Amendments. For instance, "established Fifteenth Amendment principles . . . single out voting restrictions based on race as impermissible whatever their justification." *Davis*, 932 F.3d at 843; *see also Guinn v. United States*, 238 U.S. 347, 363 (1915) ("by the inherent

power of the [Fifteenth] Amendment the word 'white' disappeared" from the election laws"). Likewise, states cannot discriminate in voting on the basis of sex, no matter the reason. *See Graves v. Eubank*, 87 So. 587, 588 (Ala. 1921) (the Nineteenth Amendment "by its own force and effect, strikes from section 177 of our state Constitution the word 'male,' . . . when used in connection with the right and qualification to vote"). And finally, states cannot argue that legitimate policies justify a poll tax in federal elections. *See Harman*, 380 U.S. at 544 ("Whether, as the State contends, the payment of the poll tax is also a reliable indicium of continuing residence need not be decided. . . . For federal elections the poll tax, regardless of the services it performs, was abolished by the Twenty-fourth Amendment."). There is no reason to treat the Twenty-Sixth Amendment differently.

## V.  The Law-of-the-Case Doctrine Is Inapplicable.

The district court did not reach the foregoing arguments because it concluded that *Tully I* was law of the case. But for several reasons, the law-of-the-case doctrine poses no barrier to considering the merits of Plaintiffs' arguments in this Court.

### A.  *Tully I*'s preliminary ruling is not law of the case.

As an initial matter, the district court was wrong to treat the preliminary injunction decision as binding. *Tully I*'s analysis should be considered by this Court, but it is not law of the case. It is black-letter law that "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The district court cited several out-of-circuit cases for the proposition that rulings on "pure issues of law" are binding when reached in the context of a

preliminary injunction. SA12-13. But as these decisions recognize, courts must be careful in applying this rule, especially when appeals are decided with unusual speed. In *Sherley v. Sebelius*, for example, the court emphasized that legal determinations on preliminary-injunction review should be treated as law of the case only where "unusual time constraints" were not present. 689 F.3d 776, 782 (D.C. Cir. 2012). By contrast, this Court decided *Tully I* on an accelerated briefing schedule to provide an answer as far in advance of the general election as possible. *See supra* p.2.

Compounding the time pressures, the panel in *Tully I* emphasized that federal courts should "exercise caution and restraint" when considering whether to issue a preliminary injunction "on the eve of an election." 977 F.3d at 611-12 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). That important background principle does not apply at summary judgment. *See Purcell*, 549 U.S. at 5 ("we express no opinion here on the correct disposition, after full briefing and argument, . . . on the ultimate resolution of these cases"). The district court thought it "clear" that the holding in *Tully I* "did not turn on *Purcell* or on the preliminary-injunction posture." SA8. But that disregards the panel's plain statement at the outset that identified *Purcell* as one of the factors "guid[ing] our decision in this case." *Tully I*, 977 F.3d at 611-12.

In any event, the majority in *Tully I* stopped short of concluding that Plaintiffs' claims failed as a matter of law, concluding that "Plaintiffs' claim under the Twenty-Sixth Amendment, which only protects the right to vote, is *unlikely to succeed*." 977 F.3d at 614 (emphasis added). Judge Ripple similarly concluded only that Plaintiffs had made a "weak" rather than strong showing on this claim. *Id*. at 619. This

phrasing demonstrates that the panel's analyses of the Twenty-Sixth Amendment claim in *Tully I* are not the sort of unambiguous legal determinations that become law of the case after a preliminary injunction decision.

As then-Judge Alito explained, in the "typical situation—where the prior panel stopped at the question of likelihood of success—the prior panel's legal analysis must be carefully considered, but it is not binding on the later panel." *Pitt News v. Pappert*, 379 F.3d 96, 104–05 (3d Cir. 2004). In that case, as here, the preliminary-injunction panel "stated only that *The Pitt News* 'ha[d] not *shown a likelihood of succeeding* on the merits of its claim'" and did not take "an unequivocal position on the merits." *Id*. The later panel thus did not consider the prior decision binding, concluding that "particularly where important First Amendment issues are raised, the later panel has a duty, in the end, to exercise its own best judgment." *Id*.[9]

## B.    Even if *Tully I* were law of the case, the Court should revisit its reading of *McDonald*.

Even if *Tully I* were law of the case as to the Twenty-Sixth Amendment claim— and it is not—its analysis still would not be binding in this appeal. Law of the case "merely expresses the practice of courts generally to refuse to reopen what has been

---

[9] In *Pearson v. Thompson*, 955 F.2d 46 (7th Cir. 1992) (tbl.), 1992 WL 25349, which the district court cited in support of its analysis (at SA12), this Court held that a prior panel's preliminary-injunction opinion established the law of the case. But that prior opinion expressly reached the merits and unambiguously held that the claim failed as a matter of law. *See Curtis v. Thompson*, 840 F.2d 1291, 1297 (7th Cir. 1988) ("[S]hould we agree with the district court that the plaintiff's complaint is insufficient as a matter of law, denial of an injunction on that basis alone is appropriate and proper. . . . The propriety of the district court's action therefore depends upon whether Curtis' complaint states a claim under the First Amendment."). This showed that the preliminary injunction opinion "did more than 'simply deny extraordinary relief for want of a clear and strong showing on the merits.'" *Pearson*, 1992 WL 25349, at *1. *Tully I* contains no comparable holding.

decided" and is "not a limit to their power." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988). The doctrine "is not hard and fast, and so a party is free to argue that an intervening change in law or other changed or special circumstance warrants a departure." *Tice v. American Airlines, Inc.*, 373 F.3d 851, 854 (7th Cir. 2004); *see also Boyer v. BNSF Ry.*, 824 F.3d 694, 710–11 (7th Cir. 2016) (calling doctrine "discretionary rather than mandatory"). As shown below, two exceptions to the law-of-the-case doctrine would apply in this instance, either of which would permit the Court to reach the merits.

### 1.     Intervening authority has called *Tully I* into question.

A court may depart from the law of the case where there is "a decision of the Supreme Court after the first review that is inconsistent with the court's earlier decision." *Kathrein v City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014). *Brnovich*, issued roughly eight months after *Tully I*, is such an intervening decision.

In *Brnovich*, the Supreme Court addressed two Arizona voting laws, including a law that limited the persons who could collect ballots "[f]or those who choose to vote early by mail." 141 S. Ct. at 2334. The plaintiffs contended that this law violated Section 2 of the VRA—that is, abridged "the right of any citizen of the United States to vote on account of race," 52 U.S.C. § 10301(a)—both because the law had a disparate impact on minority voters and because the law was enacted with discriminatory intent. 141 S. Ct. at 2334. The Supreme Court divided sharply over these claims. The majority held that the law limiting absentee-ballot collection did not violate Section 2's multi-factor effects test and that the district court reasonably concluded that the law was not enacted with discriminatory purpose. *Id.* at 2346-50.

The dissent disagreed and would have held that Section 2's "broad intent" and "broad text" prohibited the law because of its effects. *Id.* at 2356-61 (Kagan, Breyer, & Sotomayor, JJ., dissenting). This extensive analysis would have been superfluous if absentee voting laws simply fell outside the "right to vote."

Importantly, despite a "fresh look at the statutory text" of the VRA, 141 S. Ct. at 2337, no Justice in *Brnovich* hinted that Arizona's absentee-ballot-collection law did not trigger scrutiny because the law merely addressed the "right to vote absentee" rather than the "right to vote." To the contrary, all nine Justices agreed that absentee voting rules fell in the heartland of Section 2. The *Brnovich* majority cited with evident approval the 1982 Senate Report's conclusion that "discriminat[ion] with respect to absentee voting" was actionable under Section 2 of the VRA, noting that the lack of other examples "likely showed that the VRA and other efforts had achieved a large measure of success in combating the previously widespread practice of using such rules to hinder minority groups from voting." *Id.* at 2333 & n.4 (citing *Brown*, 279 F. Supp. at 63). Citing the 1982 House Report, the dissent likewise observed that "an election system would violate Section 2 if minority citizens had a lesser opportunity than white citizens to use absentee ballots." 141 S. Ct. at 2363. "Even if the minority citizens could just as easily vote in person," the dissent continued, "the scheme would 'result in unequal access to the political process.' That is . . . the only reading of Section 2 possible, given the statute's focus on equality." *Id.* (citing H.R. Rep. No. 97-227 at 31); *see also supra* pp. 17-18.

The district court thought *Brnovich* could be distinguished because the case "addressed § 2 of the Voting Rights Act—not the Constitution." SA13-14. But *Brnovich* itself acknowledged that Congress patterned Section 2 of the VRA on the Fifteenth Amendment. 141 S. Ct. at 2330-31. In any event, an intervening opinion need not address exactly the same statute or constitutional provision for a court to decline to apply law of the case. *E.g.*, *United States v. Holloway*, 630 F.3d 252, 258 (1st Cir. 2011) ("A Supreme Court opinion need not be directly on point to undermine one of our opinions."); *United States v. Van Alstyne*, 584 F.3d 803, 813 (9th Cir. 2009) (later decision "sufficiently undercut" the prior case's reasoning). *Brnovich* at a minimum significantly undercuts *Tully I*'s reasoning, warranting a new look at the foundational premise of the majority's analysis.

        **2.**     ***Tully I*'s interpretation is erroneous and of great practical significance.**

A court may also revisit the law of the case if the earlier decision is "clearly erroneous." *Kathrein*, 752 F.3d at 685. That provides a second basis for reexamining *Tully I*—assuming the law-of-the-case doctrine even applies.

As explained above, the majority's interpretation of *McDonald* in *Tully I* is directly contrary to text, history, and precedent. Virtually no other court has interpreted *McDonald* as applying to a Twenty-Sixth Amendment claim. While the Fifth Circuit did flirt with that conclusion on a motion to stay pending appeal, it quickly reversed course just a few months later. *See supra* pp. 21-22.

If *McDonald*'s logic applies to a claim under the Twenty-Sixth Amendment, moreover, its logic would seem to apply equally to the Fifteenth, Nineteenth, and

Twenty-Fourth Amendments—and potentially the VRA as well. Indeed, the panel acknowledged that, on its reading, laws "restricting the ability of African Americans or women or the poor to vote by mail" could not be challenged under any of the Voting Amendments. *Tully I*, 977 F.3d at 614. There is thus a serious risk that the error in *Tully I* could propagate across a broad swath of voting rights law.

Finally, the right to vote has long been recognized as "a fundamental political right, because preservative of all rights." *Reynolds*, 377 U.S. at 562 (quoting *Yick Wo. v. Hopkins*, 118 U.S. 356, 370 (1886)). And this Court has long recognized that law of the case "should not be applied where the law as announced is clearly erroneous, and establishes a practice which is contrary to the best interests of society." *Devines v. Maier*, 728 F.2d 876, 880 (7th Cir. 1984) (quoting *United States v. Habig*, 474 F.2d 57, 60 (7th Cir. 1973)). Here, those interests provide a further reason why the Court should not mechanically apply the law-of-the-case doctrine to preclude full consideration of the fundamental constitutional issues in this appeal.[10]

---

[10] Even in treating *Tully I* as law of the case, the district court noted that the decision to "follow[] *Tully*'s majority opinion does not prejudice Plaintiffs because they can return to the Seventh Circuit and request that it reconsider its position." SA14 n.7; *cf. Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910-11 (7th Cir. 1994) (a district court that disagrees with the law of the case should "signal its disagreement" but leave it to the court of appeals to "re-examine" its decisions).

## CONCLUSION

The Court should reverse the judgment below.

Dated: November 28, 2022                    Respectfully submitted,

William R. Groth, Of Counsel              /s/ *Jed W. Glickstein*
VLINK LAW FIRM LLC                        Jed W. Glickstein
3719 S. East St., Suite A                    *Counsel of Record*
Indianapolis, IN 46227                     Gary A. Isaac
(317) 637-2345, Ext. 132                  Michael A. Scodro
WGroth@fdgtlaborlaw.com                   Brett E. Legner
                                          MAYER BROWN LLP
Mark W. Sniderman                         71 S. Wacker Drive
FINDLING PARK CONYERS                     Chicago, IL 60606
WOODY & SNIDERMAN, P.C.                   (312) 782-0600
151 N. Delaware Street, Ste. 1520         jglickstein@mayerbrown.com
Indianapolis, IN 46204                    gisaac@mayerbrown.com
(317) 231-1100                            mscodro@mayerbrown.com
msniderman@findlingpark.com               blegner@mayerbrown.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

/s/ *Jed W. Glickstein*
Jed W. Glickstein

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Circuit Rule 32(c) because it contains 9,870 words, excluding the parts exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Circuit Rule 32(a)(6) because the body of the brief has been prepared in 12-point Century Schoolbook font and the footnotes have been prepared in 11-point Century Schoolbook font using Microsoft Word 2016.

/s/ *Jed W. Glickstein*
Jed W. Glickstein

*Counsel for Plaintiffs-Appellants*

## REQUIRED SHORT APPENDIX

Final Judgment,
 September 29, 2022.........................................................................SA1

Order on Motions for Summary Judgment
 September 29, 2022.........................................................................SA4

District Court Docket Sheet
 October 18, 2022...........................................................................SA17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY,<br>KATHARINE BLACK,<br>MARC BLACK,<br>DAVID CARTER,<br>REBECCA GAINES,<br>CHAQUITTA MCCLEARY,<br>DAVID SLIVKA,<br>DOMINIC TUMMINELLO,<br>INDIANA VOTE BY MAIL, INC.<br>individually, and on behalf of those<br>similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PAUL OKESON,<br>SUZANNAH OVERHOLT,<br>KAREN CELESTINO–HORSEMAN,<br>LITANY PYLE in their official capacity as<br>members of the Indiana Election<br>Commission,<br>HOLLI SULLIVAN in her official capacity<br>as the Indiana Secretary of State,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　No. 1:20-cv-01271-JPH-DLP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FINAL JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 58**

Having this day directed the entry of final judgment, the Court now

enters **FINAL JUDGMENT** in favor of Defendants and against Plaintiffs.

Plaintiffs shall take nothing by their complaint and this action is terminated.

Date: 9/29/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

1

Roger A. G. Sharpe, Clerk

By: _Pam Pope_____

Deputy Clerk, U.S. District Court

Distribution:

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Jed W. Glickstein
MAYER BROWN LLP
jglickstein@mayerbrown.com

William R. Groth
Vlink Law Firm, LLC
wgroth@fdgtlaborlaw.com

Gary A. Isaac
MAYER BROWN LLP
gisaac@mayerbrown.com

Brett E. Legner
MAYER BROWN LLP
blegner@mayerbrown.com

Michael Anthony Scodro
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Mark W. Sniderman
FINDLING PARK CONYERS WOODY & SNIDERMAN, PC
msniderman@findlingpark.com

Jeffrey M. Strauss
MAYER BROWN LLP
jstrauss@mayerbrown.com

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL
caryn.szyper@atg.in.gov

3

SA3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA TULLY, | ) |
| KATHARINE BLACK, | ) |
| MARC BLACK, | ) |
| DAVID CARTER, | ) |
| REBECCA GAINES, | ) |
| CHAQUITTA MCCLEARY, | ) |
| DAVID SLIVKA, | ) |
| DOMINIC TUMMINELLO, | ) |
| INDIANA VOTE BY MAIL, INC. | ) |
| individually, and on behalf of those | ) |
| similarly situated, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   No. 1:20-cv-01271-JPH-DLP |
| | ) |
| PAUL OKESON, | ) |
| SUZANNAH OVERHOLT, | ) |
| KAREN CELESTINO–HORSEMAN, | ) |
| LITANY PYLE in their official capacity as | ) |
| members of the Indiana Election | ) |
| Commission, | ) |
| HOLLI SULLIVAN in her official capacity | ) |
| as the Indiana Secretary of State,[1] | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

The parties have filed cross-motions for summary judgment, dkt. 112;

dkt. 117. Plaintiffs argue that Indiana's absentee voting law—which allows

only some Hoosiers to vote by mail—violates the Twenty-Sixth Amendment by

abridging the right to vote based on age. Defendants—the Indiana Secretary of

State and members of the Indiana Election Commission—argue that they are

---

[1] The original Defendants' successors in their public offices have been automatically
substituted as parties under Federal Rule of Civil Procedure 25(d).

1

entitled to summary judgment because the Seventh Circuit's earlier opinion in this case decided that Indiana's absentee voting law does not violate the Twenty-Sixth Amendment. *See Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020). For the reasons below, Defendants' motion for summary judgment is **GRANTED**, dkt. [117], and Plaintiffs' is **DENIED**, dkt. [112].

## I.
## Facts and Background

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.* That's not necessary here, however, because under the undisputed facts Defendants are entitled to summary judgment.

Plaintiffs include several Indiana voters who would like to vote by mail. Dkt. 6 at 3–7; *see* dkt. 13 (Plaintiffs' declarations). Under Indiana's vote by mail statute, "a voter who satisfies any of [13 categories] is entitled to vote by mail." Indiana Code § 3-11-10-24(a). One of those categories is "elderly voter[s]," *id.*, which Indiana law defines as "a voter who is at least sixty-five years of age." Ind. Code § 3-5-2-16.5. Plaintiffs allege that this category for voting by mail violates the Twenty-Sixth Amendment by abridging their right to vote based on age. Dkt. 6 at 17–20.[2]

---

[2] Plaintiffs also alleged that Indiana's vote by mail statute violated the Fourteenth Amendment and the Indiana Constitution, dkt. 6, but have voluntarily dismissed those claims, dkt. 99.

Plaintiffs filed a motion for preliminary injunction in June 2020, seeking an order requiring Indiana to implement "no-excuse absentee voting" that would allow any voter to vote by mail with an absentee ballot in the November 3, 2020, general election.  Dkt. 13; dkt. 62.  The Court denied that motion, finding that Plaintiffs were not likely to succeed on the merits.  Dkt. 72.  Plaintiffs appealed, dkt. 73, and the Seventh Circuit affirmed.  *See Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020).  The Supreme Court denied Plaintiffs' petition for certiorari.  *Tully v. Okeson*, 141 S. Ct. 2798 (2021).

The parties have filed cross-motions for summary judgment on Plaintiffs' Twenty-Sixth Amendment claim.  Dkt. 112; dkt. 117.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all

reasonable inferences "in favor of the non-moving party."  *Williams*, 832 F.3d at 648.

## III.
## Analysis

Plaintiffs argue that they are entitled to summary judgment because text, history, and precedent show that the Twenty-Sixth Amendment prohibits Indiana from "failing to provide younger voters with the same ability to vote absentee as older voters."  Dkt. 113 at 8, 10.  Defendants contend they are entitled to summary judgment under the Seventh Circuit's opinion in this case. Dkt. 117; dkt. 131; *see Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020).

### A. The Seventh Circuit's Opinion

The Seventh Circuit affirmed this Court's denial of Plaintiffs' motion for preliminary injunction, recognizing that Plaintiffs' claim "hinge[d] on one question: what is 'the right to vote'?"  *Tully*, 977 F.3d at 611.  It then explained that, under Supreme Court precedent, "the fundamental right to vote does not extend to a claimed right to cast an absentee ballot by mail," so "unless a state's actions make it harder to cast a ballot at all, the right to vote is not at stake."  *Id.* (citing *McDonald v. Bd. of Elec. Comm'rs of Chi.*, 394 U.S. 802, 807 (1969)).  Under that rule, "Indiana's absentee-voting regime" was not responsible for any challenges associated with voting in-person, so it "does not affect Plaintiffs' right to vote and does not violate the Constitution."  *Id.*

Elaborating on those principles, the Seventh Circuit recognized that the "success of [Plaintiffs' Twenty-Sixth Amendment Claim] depends on whether

Indiana's age-based absentee-voting law abridges 'the right . . . to vote'

protected by the Twenty Sixth Amendment or merely affects a privilege to vote

by mail." *Id.* at 613.  The Seventh Circuit explained that "[t]he Supreme Court

answered this question in *McDonald*" when it "held that the fundamental right

to vote means the ability to cast a ballot, but not the right to do so in a voter's

preferred manner, such as by mail." *Id.*  Indiana's absentee voter law thus

"does not 'impact [Plaintiffs'] ability to exercise the fundamental right to vote' or

'absolutely prohibit [Plaintiffs] from voting.'" *Id.* at 614.  For that reason, the

Seventh Circuit concluded that under *McDonald* the issue in this case "'[i]s not

a claimed right to vote' but a 'claimed right to absentee ballot.'" *Id.*  But the

Twenty-Sixth Amendment "only protects the right to vote." *Id.*[3]

"Two other principles" also guided the Seventh Circuit's decision: the

Indiana legislature's constitutional authority to "prescribe the manner of

holding federal elections," and the Supreme Court's *Purcell* principle, which

"counsels federal courts to exercise caution and restraint before upending state

election regulations on the eve of an election." *Id.* at 611–12 (citing *Purcell v.

Gonzalez*, 549 U.S. 1, 4 (2006)).  It's clear, though, that the holding did not

turn on *Purcell* or on preliminary-injunction procedure.  Instead, the Seventh

Circuit held that Plaintiffs' claims were foreclosed by *McDonald* and the wide

berth the Constitution gives states to regulate elections: "[W]e should not, and

will not, 'judicially legislat[e] so radical a reform [as unlimited absentee voting]

---

[3] Judge Ripple's concurring opinion recognized the majority's view that *McDonald* "establishes a rigid rule that the fundamental right to vote does not include a right to cast an absentee ballot." *Tully*, 977 F.3d at 619.

in the name of the Constitution' where the State has infringed on no one's right to vote."  *Id.* at 618.

### B. Seventh Circuit Precedent and Law of the Case

"Generally, under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."[4]  *United States v. Story*, 137 F.3d 518, 520 (7th Cir. 1998).  "[T]he discretion to reconsider an issue . . . already decided in a prior stage of litigation," is therefore sparingly exercised "unless an intervening change in the law, or some other special circumstance, warrants reexamining the claim."  *Id.*

Here, the Seventh Circuit's opinion affirming the denial of Plaintiffs' motion for a preliminary injunction is precedent to be followed as law of the case.  *See Tully*, 977 F.3d 608.  To start, the issues here—the Twenty-Sixth Amendment's meaning and application to absentee voting—are pure issues of law.  *See* dkt. 113 at 10 ("[T]he only material questions that need to be resolved for Plaintiff's remaining claim are purely legal.").  The parties do not rely on any discovery or record evidence in their briefs, *see id.*; dkt. 118—indeed, there's no designated evidence except Plaintiffs' declarations that they want to vote by mail but are not yet qualified based on their age, *see* dkt. 112.  In short, there is no "substantial new evidence introduced after the first review."  *Carmody v.*

---

[4] Defendants did not explicitly raise the law of the case doctrine until their reply brief, dkt. 131, but the issues relevant to its application have been fully briefed because the parties addressed the import of the Seventh Circuit's *Tully* decision in detail.  *See* dkt. 113 at 21–25 (arguing that "the Seventh Circuit's preliminary injunction ruling should not control here"); dkt. 126 at 16–19.

*Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397, 408 (7th Cir. 2018) (holding that the law of the case doctrine applied).

Next, the Seventh Circuit's opinion squarely addressed and cleanly resolved the legal issues now presented in the parties' motions for summary judgment.  It explained that the Supreme Court already "answered th[e] question" of whether voting by mail implicated the right to vote in the negative, so Indiana's vote by mail statute did not implicate Plaintiffs' "'right to vote' but a 'claimed right to an absentee ballot.'"  *Tully*, 977 F.3d at 614 (citing *McDonald v. Bd. of Elec. Comm'rs of Chi.*, 394 U.S. 802, 807 (1969)).  And the legal conclusion underpinning the Seventh Circuit's holding that Plaintiffs were "unlikely to succeed" was unequivocal: "Indiana's absentee-voting regime does not affect Plaintiff's right to vote and does not violate the Constitution."  *Id.* at 611.  District courts must, of course, "follow the decisions of [the Seventh Circuit] whether or not they agree."  *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).  That supports applying the law of the case doctrine—the Seventh Circuit "has long held that matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court . . . unless there is plain error of law in the original decision."  *See Evans v. City of Chicago*, 873 F.2d 1007, 1013–14 (7th Cir. 1989).

Plaintiffs nevertheless argue that the Seventh Circuit's opinion is not binding because it was "reached during the preliminary injunction phase."

Dkt. 113 at 22.[5]  But preliminary injunction proceedings are not categorically exempt from the law of the case doctrine.  *See Pearson v. Edgar*, 153 F.3d 397, 405 (7th Cir. 1998) (holding that the opinion from a previous appeal from a preliminary-injunction order "establish[ed] the law of the case").  While the Court recognizes that a decision "from the preliminary injunction stage" may be "based on incomplete evidence and a relatively hurried consideration of the issues," *Comms. Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir. 1985), there must be sound reasons for a district court to find that Seventh Circuit precedent does not control.  *See Carmody*, 893 F.3d at 408 ("[T]he law-of-the-case doctrine may yield if an intervening change in the law, or some other special circumstance, warrants reexamining the claim.").  Here, Plaintiffs have identified none.  There is no new evidence for the Court to consider and the issues do not depend on any factual findings.  *See* dkt. 113.  And as discussed above, while the Seventh Circuit referenced the *Purcell* principle because its decision came "on the eve of an election," the court unequivocally determined that Plaintiffs' claims were foreclosed by *McDonald* and the wide berth that the Constitution gives the states to regulate elections.  *Tully*, 977 F.3d at 617–18.

---

[5] Plaintiffs also cite Defendants' statement, made in a footnote of their brief in opposition to petition for a writ of certiorari to the United States Supreme Court, that "preliminary-injunction decisions have no preclusive effect on future proceedings in a single case."  *See* dkt. 113 at 22.  Since the law of the case is a prudential judicial doctrine, this Court declines to follow that concession here.  *See Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 710–11 (7th Cir. 2016).

Indeed, the Seventh Circuit has held that, at least in some circumstances, district courts have "no authority to revisit" issues resolved in an appeal from a ruling on a motion for preliminary injunction. *See Pearson*, 153 F.3d at 405. In the *Pearson* litigation, the plaintiffs filed a motion for preliminary injunction to enjoin the application of an Illinois statute regulating real estate practices. *Id.* at 399–400. The district court denied that motion and the Seventh Circuit affirmed, holding that the plaintiffs' vagueness and equal-protection challenges were "without merit." *Id.* at 400; *Curtis v. Thompson*, 840 F.2d 1291, 1304 n.12 (7th Cir. 1988). Back in the district court, the plaintiffs eventually prevailed on the vagueness and equal-protection claims. *Pearson*, 153 F.3d at 400, 405. On appeal, the Seventh Circuit held that its prior opinion "establishe[d] the law of the case on equal protection and vagueness" so the district court's "decision with respect to those issues is without effect." *Id.*

The similarities to *Pearson* favor applying the doctrine here—in both cases, the Seventh Circuit decided solely legal issues and there was no intervening reason to take a different approach. Even in circuits where preliminary injunction rulings generally "do not constitute the law of the case," within those rulings "conclusions on pure issues of law . . . are binding." *Ranchers Cattlemen Action Legal Fund v. U.S. Dept. of Ag.*, 499 F.3d 1108, 1114 (9th Cir. 2007); *see Fish v. Schwab*, 957 F.3d 1105, 1141 (10th Cir. 2020); *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015); *Sherley v. Sebelius*, 689 F.3d 776, 782–83 (D.C. Cir. 2012); *Am. Civil Liberties Union v. Mukasey*,

9

534 F.3d 181, 187–88 (3d Cir. 2008).  Here, the Seventh Circuit's conclusions

on pure issues of law are precedential and cannot be cast aside in ruling on the

parties' summary judgment motions.

Indeed, the bulk of Plaintiffs' arguments about the Twenty-Sixth

Amendment's meaning were raised to the Seventh Circuit but did not carry the

day.  Plaintiffs contend here that "the text of the Twenty-Sixth Amendment is

dispositive" and that *McDonald* does not apply.  Dkt. 113 at 12–21.  But they

first raised those arguments to the Seventh Circuit.  *See* Plaintiffs–Appellants'

Brief, 2020 WL 5261085 at *16, (relying on "the plain text of the Twenty-Sixth

Amendment" and arguing that "McDonald does not address, much less

override, the meaning of the 'deny or abridge' language in the voting

amendments").  And the Seventh Circuit's opinion rejected them, "either

expressly or by necessary implication,"[6] restricting this Court's ability to revisit

those questions now.  *Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458

(7th Cir. 2018).

Plaintiffs resist this outcome by arguing that the Seventh Circuit's

opinion has been undermined by a recent Supreme Court decision.  Dkt. 113

at 22 (citing *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)).  But

*Brnovich* does not cast serious doubt on *Tully*'s reasoning since *Brnovich*

addressed § 2 of the Voting Rights Act—not the Constitution—and "nobody

---

[6] Even Plaintiffs' current argument that was not fully presented to the Seventh
Circuit—that the "legislative history of the Twenty-Sixth Amendment reinforces the
conclusion that laws governing absentee voting are part of the 'right to vote'"—is
contradicted by the Seventh Circuit's conclusion that *McDonald* held the opposite.  *See
Tully*, 977 F.3d at 613.

dispute[d] . . . that an 'abridgement' of the right to vote *under § 2* does not require outright denial of the right."  141 S. Ct. at 2341 (emphasis added).  Nor is the law of the case doctrine undermined by the Seventh Circuit's reliance on the Supreme Court's *McDonald* opinion.  *See Tully*, 977 F.3d at 611, 613–14. While the Supreme Court has not addressed *McDonald*'s application to the Twenty-Sixth Amendment, *see* dkt. 113 at 18–21, the Seventh Circuit's majority opinion adopted the view that *McDonald* "establishes a rigid rule that the fundamental right to vote does not include a right to cast an absentee ballot."  *Tully*, 977 F.3d at 619 (Ripple, J., concurring).  The Court follows that understanding of *McDonald* unless a higher court expressly holds otherwise. *See Reiser*, 380 F.3d at 1029; *Inter'l Union of Oper. Eng'rs v. Daley*, 983 F.3d 287, 300 (7th Cir. 2000) ("[T]he Supreme Court does not normally overturn or dramatically limit its precedents *sub silentio*.").[7]

In short, while the law of the case is "a discretionary doctrine, not an inflexible dictate," *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018), it applies when the Seventh Circuit has made a "deci[sion] upon a rule of law," *Story*, 137 F.3d at 520.  *See Carmody*, 893 F.3d at 408.  That's the case here with respect to the Seventh Circuit's opinion holding that Plaintiffs' challenge to Indiana's vote by mail statute based on the Twenty-Sixth Amendment is foreclosed by *McDonald*.  *See Tully*, 977 F.3d 608.

---

[7] This Court's following *Tully*'s majority opinion does not prejudice Plaintiffs because they can return to the Seventh Circuit and request that it reconsider its position.  *See Evans*, 873 F.3d at 1014 ("[T]he law of the case doctrine does not limit [the Seventh Circuit's] power to reconsider earlier rulings in a case."); *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007).

Therefore, under both the law of the case doctrine and this Court's duty to

follow Seventh Circuit precedent, Defendants are entitled to summary

judgment.

## IV.
## Conclusion

Plaintiffs' motion for summary judgment is **DENIED**, dkt. [112], and

Defendants' motion for summary judgment is **GRANTED**, dkt. [117].  Plaintiffs'

motion for oral argument is **DENIED** as unnecessary.  Dkt. [127].

The **clerk shall update** the docket to reflect the automatic party

substitutions reflected in this order's caption.

Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 9/29/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Thomas M. Fisher
INDIANA ATTORNEY GENERAL
tom.fisher@atg.in.gov

Jefferson S. Garn
INDIANA ATTORNEY GENERAL
Jefferson.Garn@atg.in.gov

Jed W. Glickstein
MAYER BROWN LLP

jglickstein@mayerbrown.com

William R. Groth
Vlink Law Firm, LLC
wgroth@fdgtlaborlaw.com

Gary A. Isaac
MAYER BROWN LLP
gisaac@mayerbrown.com

Brett E. Legner
MAYER BROWN LLP
blegner@mayerbrown.com

Michael Anthony Scodro
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

Mark W. Sniderman
FINDLING PARK CONYERS WOODY & SNIDERMAN, PC
msniderman@findlingpark.com

Jeffrey M. Strauss
MAYER BROWN LLP
jstrauss@mayerbrown.com

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL
caryn.szyper@atg.in.gov

13

**U.S. District Court**
**Southern District of Indiana (Indianapolis)**
**CIVIL DOCKET FOR CASE #: 1:20–cv–01271–JPH–DLP**

TULLY et al v. OKESON et al
Assigned to: Judge James Patrick Hanlon
Referred to: Magistrate Judge Doris L. Pryor
Case in other court: 7th Circuit, 20–02605 – Mandate
               7th Circuit, 22–02835
Cause: 42:1983 Civil Rights Act

Date Filed: 04/29/2020
Date Terminated: 09/29/2022
Jury Demand: None
Nature of Suit: 441 Civil Rights: Voting
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2020 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants, filed by All Plaintiffs. (Filing fee $400, receipt number 0756–5973629) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons)(Sniderman, Mark) (Entered: 04/29/2020) |
| 04/29/2020 | 2 | NOTICE of Appearance by Mark W. Sniderman on behalf of Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 04/29/2020) |
| 04/29/2020 | 3 | NOTICE of Appearance by William R. Groth on behalf of Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Groth, William) (Entered: 04/29/2020) |
| 04/30/2020 | 4 | Summons Issued as to ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (REO) (Entered: 04/30/2020) |
| 04/30/2020 | 5 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (REO) (Entered: 04/30/2020) |
| 05/04/2020 | 6 | AMENDED COMPLAINT *for Declaratory and Injunctive Relief,* against All Defendants, filed by All Plaintiffs.(Sniderman, Mark) (Entered: 05/04/2020) |
| 05/04/2020 | 7 | NOTICE *of Service of Amended Complaint*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO, re 6 Amended Complaint. (Sniderman, Mark) (Entered: 05/04/2020) |
| 05/06/2020 | 8 | NOTICE of Appearance by Jefferson S. Garn on behalf of Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 05/06/2020) |
| 05/06/2020 | 9 | NOTICE of Appearance by Courtney Lyn Abshire on behalf of Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Abshire, Courtney) (Entered: 05/06/2020) |
| 05/11/2020 | 10 | SCHEDULING ORDER: Initial Pretrial Conference set for 6/23/2020 02:00 PM (Eastern Time) in Telephonic before Magistrate Judge Doris L. Pryor. The information needed to participate in this telephonic conference will be provided by a separate notification. No fewer than seven (7) days before the IPTC, counsel must file a Proposed CMP. See Order for additional details. Signed by Magistrate Judge Doris L. Pryor on 5/11/2020.(SWM) (Entered: 05/13/2020) |

| 05/13/2020 | 11 | RETURN of Service by CMRRR, filed by All Plaintiffs. ZACHARY E. KLUTZ served on 5/4/2020; CONNIE LAWSON served on 5/4/2020; S. ANTHONY LONG served on 5/4/2020; PAUL OKESON served on 5/4/2020; SUZANNAH WILSON OVERHOLT served on 5/4/2020. (Groth, William) (Entered: 05/13/2020) |
|---|---|---|
| 05/17/2020 | 12 | NOTICE of Parties' First Extension of Time, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 05/17/2020) |
| 06/08/2020 | 13 | MOTION for Preliminary Injunction , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Declaration of Barbara Tully, # 2 Exhibit Declaration of David Carter, # 3 Exhibit Declaration of Elizabeth Kmieciak, # 4 Exhibit Declaration of Janice Johnson, # 5 Exhibit Declaration of Marc Black, # 6 Exhibit Declaration of Katharine Black, # 7 Exhibit Declaration of Shelly Brown, # 8 Exhibit Declaration of Chaquitta McCreary, # 9 Exhibit Declaration of Dominic Tumminello, # 10 Exhibit Declaration of Rebecca Gaines, # 11 Exhibit Declaration of Katherine Paolacci, # 12 Exhibit Declaration of David Slivka, # 13 Exhibit Declaration of Jeffrey G. Jones, M.D., M.P.H., # 14 Exhibit Declaration of Gregory Shufeldt, Ph.D.)(Sniderman, Mark) (Entered: 06/08/2020) |
| 06/08/2020 | 14 | BRIEF/MEMORANDUM in Support re 13 MOTION for Preliminary Injunction , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 06/08/2020) |
| 06/09/2020 | 15 | SCHEDULING ORDER–TELEPHONIC Status Conference set for 6/18/2020 at 3:30 PM (Eastern) before Magistrate Judge Doris L. Pryor. The purpose of the conference is to discuss a briefing schedule regarding the Motion for Preliminary Injunction 13 . Signed by Magistrate Judge Doris L. Pryor on 6/9/2020.(CBU) (Entered: 06/10/2020) |
| 06/12/2020 | 16 | NOTICE of Appearance by Parvinder Kaur Nijjar on behalf of Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Nijjar, Parvinder) (Entered: 06/12/2020) |
| 06/16/2020 | 17 | ***WITHDRAWN PER 93 *** MOTION to Certify Class , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Declaration of William R. Groth, # 2 Exhibit Declaration of Mark W. Sniderman)(Sniderman, Mark) Modified on 1/19/2021 (MAC). (Entered: 06/16/2020) |
| 06/16/2020 | 18 | BRIEF/MEMORANDUM in Support re 17 MOTION to Certify Class , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 06/16/2020) |
| 06/16/2020 | 20 | *Joint* CASE MANAGEMENT PLAN TENDERED, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO . (Sniderman, Mark) (Entered: 06/16/2020) |
| 06/18/2020 | 21 | ANSWER to 6 Amended Complaint , filed by All Defendants.(Garn, Jefferson) (Entered: 06/18/2020) |
| 06/22/2020 | 23 | PRELIMINARY INJUNCTION SCHEDULING ORDER – The parties appeared by counsel telephonically for a telephonic status conference on June 18, 2020 pursuant to Rule 16 of the Federal Rules of Civil Procedure regarding the Plaintiffs' Motion for |

| | | |
|---|---|---|
| | | Preliminary Injunction, Dkt. [ 13 ]. The Court establishes the following schedule to prepare this matter for a hearing on that motion (see Order for established deadlines and addition details). Signed by Magistrate Judge Doris L. Pryor on 6/22/2020.(SWM) (Entered: 06/23/2020) |
| 06/29/2020 | 24 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by counsel for an Initial Pretrial Conference on June 23, 2020. The Court will approve the Case Management Plan, by separate order, with the changes to which the parties have agreed.This matter is scheduled for a telephonic status conference on June 29, 2020 at 11:30 a.m. (Eastern) to discuss case status. Counsel shall attend the statusconference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system.This matter is scheduled for a telephonic settlement conference on July 14, 2020 at 10:00 a.m. (Eastern) before Magistrate Judge Doris L. Pryor. The parties shall attend the conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 06/29/2020) |
| 06/29/2020 | 26 | Unopposed MOTION for Extension of Time to File Response to 7/24/2020 re 17 MOTION to Certify Class , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNA WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) (Entered: 06/29/2020) |
| 06/29/2020 | 27 | ORDER: CASE MANAGEMENT PLAN APPROVED AS AMENDED. Dispositive Motions due by 4/29/2021. Discovery due by 2/26/2021. Signed by Magistrate Judge Doris L. Pryor on 6/29/2020.(SWM) (Entered: 06/30/2020) |
| 06/29/2020 | 28 | ORDER Regarding Discovery Disputes. See Order. Signed by Magistrate Judge Doris L. Pryor on 6/29/2020.(SWM) (Entered: 06/30/2020) |
| 06/29/2020 | 29 | ORDER REGARDING PROTECTIVE ORDERS. See Order. Signed by Magistrate Judge Doris L. Pryor on 6/29/2020.(SWM) (Entered: 06/30/2020) |
| 06/30/2020 | 30 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on June 29, 2020. The parties discussed the status of and future plans for discovery. The parties also discussed the telephonic Settlement Conference scheduled for July 14, 2020. The call was held and concluded. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 07/01/2020) |
| 07/01/2020 | 31 | ORDER granting Defendants' 26 Motion for Extension of Time to File Response to 7/24/2020 re 17 MOTION to Certify Class . Signed by Magistrate Judge Doris L. Pryor on 7/1/2020. (SWM) (Entered: 07/01/2020) |
| 07/07/2020 | 32 | MOTION *to Excuse Individual Plaintiffs from Personal Attendance at July 14, 2020 Telephonic Settlement Conference*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/07/2020) |
| 07/08/2020 | 33 | ORDER granting Plaintiffs' 32 Motion to Excuse Individual Plaintiffs from Personal Attendance at July 14, 2020 Telephonic Settlement Conference. The individual Plaintiffs are excused from personal attendance of the July 14, 2020 settlement conference. Barbara Tully shall attend the settlement conference on behalf of all Plaintiffs and shall have full and final settlement authority. Signed by Magistrate Judge Doris L. Pryor on 7/8/2020. (MAC) (Entered: 07/09/2020) |
| 07/17/2020 | 36 | STIPULATION of Dismissal *Only*, as to Plaintiffs JANICE JOHNSON, SHELLY BROWN, KATHERINE PAOLACCI, filed by All Plaintiffs. (Sniderman, Mark) (Entered: 07/17/2020) |
| 07/17/2020 | 38 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared in person and by counsel for a settlement conference on July 14, 2020. This matter is CONTINUED to July 22, 2020 at 9:00 a.m. (Eastern) by telephone. Counsel shall attend the status conference by calling thedesignated |

| | | telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 07/20/2020) |
|---|---|---|
| 07/20/2020 | 37 | MOTION for Protective Order , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Exhibit Protective Order)(Garn, Jefferson) (Entered: 07/20/2020) |
| 07/21/2020 | 39 | Unopposed MOTION to Vacate *Settlement Conference*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) (Entered: 07/21/2020) |
| 07/21/2020 | 40 | ORDER – This matter comes before the Court on the Unopposed Motion to Vacate Settlement Conference, Dkt. [ 39 ]. The Court, having considered the same and being duly advised, hereby GRANTS said motion. The telephonic settlement conference is CONVERTED to a telephonic status conference on July 22, 2020 at 9:00 a.m. (Eastern). Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor on 7/21/2020.(SWM) (Entered: 07/21/2020) |
| 07/21/2020 | 42 | ORDER Acknowledges Parties' 36 Stipulation of Dismissal. The Clerk is DIRECTED to dismiss ONLY Shelly Brown, Janice Johnson, and Katherine Paolacci from the docket. (Marginal Notation). Signed by Judge James Patrick Hanlon on 7/21/2020. (MAC) (Entered: 07/22/2020) |
| 07/22/2020 | 43 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on July 22, 2020. The parties discussed the status of the case.This matter is scheduled for a telephonic status conference on October 14, 2020 at 11:30 a.m. (Eastern) to discuss case status. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 07/23/2020) |
| 07/22/2020 | 44 | STIPULATED PROTECTIVE ORDER 37 So ordered. Signed by Magistrate Judge Doris L. Pryor on 7/22/2020.(SWM) (Entered: 07/23/2020) |
| 07/24/2020 | 45 | MOTION for Attorney(s) Jed W. Glickstein to Appear pro hac vice (Filing fee $100, receipt number 0756–6096438), filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Certification for Jed W. Glickstein, # 2 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | 46 | MOTION for Attorney(s) Gary A. Isaac to Appear pro hac vice (Filing fee $100, receipt number 0756–6096464), filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Gary A. Isaac Certification, # 2 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | 47 | MOTION for Attorney(s) Brett E. Legner to Appear pro hac vice (Filing fee $100, receipt number 0756–6096480), filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Brett E. Legner Certification, # 2 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | 48 | MOTION for Attorney(s) Michael A. Scodro to Appear pro hac vice (Filing fee $100, receipt number 0756–6096501), filed by Plaintiffs KATHARINE BLACK, MARC |

| | | |
|---|---|---|
| | | BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Michael A. Scodro Certification, # 2 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | 49 | MOTION for Attorney(s) Jeffrey M. Strauss to Appear pro hac vice (Filing fee $100, receipt number 0756–6096509), filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Jeffrey M. Strauss Certification, # 2 Text of Proposed Order)(Sniderman, Mark) (Entered: 07/24/2020) |
| 07/24/2020 | 50 | RESPONSE in Opposition re 17 MOTION to Certify Class , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 07/24/2020) |
| 07/24/2020 | 51 | NOTICE of Appearance by Thomas M. Fisher on behalf of Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Fisher, Thomas) (Entered: 07/24/2020) |
| 07/24/2020 | 52 | NOTICE of Appearance by Kian J. Hudson on behalf of Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Hudson, Kian) (Entered: 07/24/2020) |
| 07/24/2020 | 53 | RESPONSE in Opposition re 13 MOTION for Preliminary Injunction , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Exhibit 1 Angerman declaration, # 2 Exhibit 2 Hoskins declaration, # 3 Exhibit 3 Williams declaration, # 4 Exhibit 4 Clifton declaration, # 5 Exhibit 5 EO 20–02, # 6 Exhibit 6 EO 20–07, # 7 Exhibit 7 EO 20–08, # 8 Exhibit 8 IEC order 2020–37, # 9 Exhibit 9 Pl. interrogatory responses)(Garn, Jefferson) (Entered: 07/24/2020) |
| 07/27/2020 | 54 | MOTION for Attorney(s) Bridget A. Clarke to Appear pro hac vice for Interested/Amicus Party, Disability Rights Education and Defense Fund, Inc. (Filing fee $100.00, receipt number IP070087). (Attachments: # 1 Text of Proposed Order, # 2 Copy of Receipt, # 3 Envelope)(DWH) (Entered: 07/27/2020) |
| 07/28/2020 | 55 | ORDER granting 45 Motion to Appear pro hac vice. Attorney Jed W. Glickstein for BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO and INDIANA VOTE BY MAIL, INC added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Copy to Jed W. Glickstein via US Mail. Signed by Magistrate Judge Doris L. Pryor on 7/28/2020. (SWM) (Entered: 07/28/2020) |
| 07/28/2020 | 56 | ORDER granting 46 Motion to Appear pro hac vice. Attorney Gary A. Isaac for BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO and INDIANA VOTE BY MAIL, INC. added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Copy to Gary A. Isaac via US Mail. Signed by Magistrate Judge Doris L. Pryor on 7/28/2020. (SWM) (Entered: 07/28/2020) |
| 07/28/2020 | 57 | ORDER granting 47 Motion to Appear pro hac vice. Attorney Brett E. Legner for BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO, and INDIANA VOTE BY MAIL, INC. added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Copy to Brett E. Legner via US Mail. Signed by Magistrate Judge Doris L. Pryor on 7/28/2020. (SWM) (Entered: |

| | | |
|---|---|---|
| | | 07/28/2020) |
| 07/28/2020 | 58 | ORDER granting 48 Motion to Appear pro hac vice. Attorney Michael Scodro for BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO and INDIANA VOTE BY MAIL INC. added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Copy to Michael A. Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 7/28/2020. (SWM) (Entered: 07/29/2020) |
| 07/28/2020 | 59 | ORDER granting 49 Motion to Appear pro hac vice. Attorney Jeffrey M. Strauss for BARBARA TULLY, KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, DOMINIC TUMMINELLO and INDIANA VOTE BY MAIL, INC. added. Signed by Magistrate Judge Doris L. Pryor on 7/28/2020. (SWM) (Entered: 07/29/2020) |
| 07/31/2020 | 60 | REPLY in Support of Motion re 17 MOTION to Certify Class , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 07/31/2020) |
| 07/31/2020 | 61 | Appendix of Exhibits in Support of Reply in Support of Motion re 13 MOTION for Preliminary Injunction , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit Exhibit 1: Tribune Star Op–Ed, July 28, 2020, # 2 Exhibit Exhibit 2: Journal Gazette Editorial, July 26, 2020, # 3 Exhibit Exhibit 3: Statement of Indiana Advisory Committee to U.S. Commission on Civil Rights, July 23, 2020, # 4 Exhibit Exhibit 4: N.Y. Times Coronavirus Tracker, last updated July 31, 2020 9:01 AM, # 5 Exhibit Exhibit 5: State of Indiana, Executive Order 20–37, July 24, 2020, # 6 Exhibit Exhibit 6: Journal Gazette Article, May 15, 2020, # 7 Exhibit Exhibit 7: Indiana COVID–19 Dashboard, results as of July 29, 2020, 11:59 PM, # 8 Exhibit Exhibit 8: Consolidated CDC guidance and press releases, # 9 Exhibit Exhibit 9: Indianapolis Star Article, July 16, 2020, # 10 Exhibit Exhibit 10: Declaration of Myla Eldridge, July 30, 2020, # 11 Exhibit Exhibit 11: Declaration of Michelle Fajman, July 31, 2020, # 12 Exhibit Exhibit 12: National Vote at Home Institute, Applying for a Mailed–out Ballot: A State–by– State Guide (updated March 2020), # 13 Exhibit Exhibit 13: Indiana 2016 General Election Turnout and Registration)(Sniderman, Mark) (Entered: 07/31/2020) |
| 07/31/2020 | 62 | REPLY in Support of Motion re 13 MOTION for Preliminary Injunction , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 07/31/2020) |
| 08/06/2020 | 63 | ORDER – granting 54 Motion to Appear pro hac vice. Attorney Bridget A. Clarke for DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, INC added. Applicant shall register for electronic filing, as required by Local Rule 5–3, within ten (10) days of the entry of this Order. Additionally, the Clerk is instructed to add to the docket Disability Rights Education and Defense Fund, Inc. as an Amicus Party. Signed by Magistrate Judge Doris L. Pryor on 8/6/2020. Copy Mailed. (CKM) (Entered: 08/06/2020) |
| 08/11/2020 | 64 | MOTION for Leave to File *Amici Curiae Brief*, filed by Amicus DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, INC. (Attachments: # 1 Exhibit Amici Curiae Brief)(Clarke, Bridget) (Entered: 08/11/2020) |
| 08/14/2020 | 65 | NOTICE *of Supplemental Authority*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, |

| | | |
|---|---|---|
| | | CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO, re 13 MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit Ex A – Common Cause Rhode Island v Gorbea – 1st Circuit, # 2 Exhibit Ex B – Journal Gazette Article, # 3 Exhibit Ex C – RNC v Common Cause – Sup Ct) (Sniderman, Mark) (Entered: 08/14/2020) |
| 08/16/2020 | 66 | NOTICE *of Supplemental Filing*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO, re 13 MOTION for Preliminary Injunction . (Attachments: # 1 Exhibit Ex A – Indianapolis Star Article, # 2 Exhibit Ex B – NWI Times Article, # 3 Exhibit Ex C – WTHR Article) (Sniderman, Mark) (Entered: 08/16/2020) |
| 08/18/2020 | 67 | MOTION to Consolidate Cases , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 08/18/2020) |
| 08/18/2020 | 68 | COURT NOTICE: Any response to Defendants' Motion to Consolidate, dkt. 67, must be filed by Friday, August 21, 2020. *** TEXT ONLY ENTRY *** (PKP) Modified on 8/18/2020 (PKP). (Entered: 08/18/2020) |
| 08/19/2020 | 69 | RESPONSE in Opposition re 67 MOTION to Consolidate Cases , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 08/19/2020) |
| 08/19/2020 | 70 | RESPONSE in Opposition re 67 MOTION to Consolidate Cases , filed by Miscellaneous COMMON CAUSE INDIANA, INDIANA STATE CONFERENCE OF THE NAACP. (Sniderman, Mark) (Entered: 08/19/2020) |
| 08/20/2020 | 71 | ORDER DENYING MOTION TO CONSOLIDATE – Defendants have filed a motion to consolidate Common Cause Indiana et al. v. Election Commission Members et al., No. 1:20−cv−2007−SEB−TAB, with this case. Dkt. 67. They argue that this Court should exercise its discretion to consolidate the cases to "ensure judicial efficiency and avoid potential confusion by separate rulings." The motion to consolidate is DENIED. Dkt. 67 (SEE ORDER FOR ADDITIONAL INFORMATION). Signed by Judge James Patrick Hanlon on 8/20/2020. Copies distributed pursuant to distribution list. (DWH) (Entered: 08/20/2020) |
| 08/21/2020 | 72 | ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION – As the Supreme Court has noted, allowing broader voting by mail may be wise policy. See McDonald, 394 U.S. at 811 (noting Illinois' "consistent and laudable state policy of adding, over a 50−year period, groups to the absentee coverage"). Some states have chosen "no−excuse" voting by mail for all. See dkt. 62 at 14. Indiana has decided otherwise. The question here, however, is not whether the policy is wise, but whether it is constitutional. For the reasons explained above, Plaintiffs have not shown a reasonable likelihood of success in showing that the policy is unconstitutional. Plaintiffs' motion for a preliminary injunction is therefore DENIED. Dkt. 13 . Amicus Disability Rights Education and Defense Fund's motion for leave to file amici curiae brief is GRANTED. Dkt. 64 . The motion to certify class remains pending. Dkt. 17. The parties shall file a status update by August 28, 2020 (SEE ORDER FOR ADDITIONAL INFORMATION). Signed by Judge James Patrick Hanlon on 8/21/2020. (DWH) (Entered: 08/21/2020) |
| 08/24/2020 | 73 | NOTICE OF APPEAL as to 72 Order on Motion for Leave to FileOrder on Motion for Preliminary Injunction, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Filing fee $505, receipt number 0756−6145085) (Sniderman, Mark) (Entered: 08/24/2020) |

| 08/24/2020 | 74 | PARTIES' SHORT RECORD re 73 Notice of Appeal – **Instructions for Attorneys/Parties attached.** (LBT) (Entered: 08/24/2020) |
|---|---|---|
| 08/24/2020 | 75 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 73 Notice of Appeal. **– for Court of Appeals Use Only.** (LBT) (Entered: 08/24/2020) |
| 08/25/2020 | 76 | USCA Case Number 20–2605 for 73 Notice of Appeal filed by DOMINIC TUMMINELLO, MARC BLACK, JANICE JOHNSON, BARBARA TULLY, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, SHELLY BROWN, REBECCA GAINES, KATHERINE PAOLACCI, DAVID CARTER, KATHARINE BLACK, CHAQUITTA MCCLEARY, ELIZABETH KMIECIAK. (LBT) (Entered: 08/25/2020) |
| 08/28/2020 | 77 | STATUS REPORT , *Joint,* by All Plaintiffs. (Sniderman, Mark) (Entered: 08/28/2020) |
| 08/31/2020 | 78 | NOTICE of Service of Initial Disclosures , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 08/31/2020) |
| 09/08/2020 | 79 | Witness List *Preliminary*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO, Exhibit List *Preliminary*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 09/08/2020) |
| 09/14/2020 | 80 | Witness List *preliminary*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT, Exhibit List *preliminary*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 09/14/2020) |
| 09/30/2020 | 81 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5–3, William R. Groth hereby notifies the Clerk of the court of changed contact information. (Groth, William) (Entered: 09/30/2020) |
| 10/14/2020 | 83 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on October 13, 2020. The parties discussed the status of the case.This matter is scheduled for a telephonic status conference on December 3, 2020 at 1:00 p.m. (Eastern) to discuss case status. Counsel shall attend the statusconference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 10/15/2020) |
| 10/28/2020 | 84 | MANDATE of USCA as to 73 Notice of Appeal filed by DOMINIC TUMMINELLO, MARC BLACK, JANICE JOHNSON, BARBARA TULLY, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, SHELLY BROWN, REBECCA GAINES, KATHERINE PAOLACCI, DAVID CARTER, KATHARINE BLACK, CHAQUITTA MCCLEARY, ELIZABETH KMIECIAK (USCA #20–2605) – The judgment of the District Court is AFFIRMED, with costs, in accordance with the decision of this court entered on 10/6/2020. (LBT) (Entered: 10/28/2020) |
| 11/18/2020 | 85 | Statement *of Position,* by All Plaintiffs. (Sniderman, Mark) (Entered: 11/18/2020) |
| 11/18/2020 | 86 | Statement *of Defendant's Position* by ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 11/18/2020) |
| 12/04/2020 | 88 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on December 3, 2020. The parties discussed the status of the case.This matter is scheduled for a telephonic status conference on January 12, 2021 at 9:00 a.m. (Eastern) to discuss case status. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by |

| | | Magistrate Judge Doris L. Pryor. (CAG) (Entered: 12/04/2020) |
|---|---|---|
| 01/06/2021 | 89 | AMENDED SCHEDULING ORDER (TIME ONLY) – This matter is currently set for a telephonic Status Conference on January 12, 2021 at 9:00 a.m. The Court now changes the time to 2:30 p.m. (Eastern) on that same date. Counsel shall attend the conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Copy to Michael Anthony Scodro via Mail. Signed by Magistrate Judge Doris L. Pryor on 1/6/2021.(SWM) (Entered: 01/06/2021) |
| 01/14/2021 | 91 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on January 12, 2021. The parties discussed the status of the case.This matter is scheduled for a telephonic status conference on March 15, 2021 at 3:00 p.m. (Eastern) to discuss case status. Counsel shall attend the statusconference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 01/14/2021) |
| 01/15/2021 | 92 | MOTION to Withdraw re 17 *Motion for Class Certification*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Groth, William) Modified on 1/19/2021 – created link (DWH). (Entered: 01/15/2021) |
| 01/19/2021 | 93 | ORDER granting Plaintiffs 92 Motion to Withdraw ; withdrawing 17 Motion to Certify Class. Signed by Judge James Patrick Hanlon on 1/19/2021. (MAC) (Entered: 01/19/2021) |
| 03/17/2021 | 95 | Unopposed MOTION to Stay *Proceedings in the District Court*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Groth, William) (Entered: 03/17/2021) |
| 03/18/2021 | 96 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on March 15, 2021. The parties discussed the status of the case.This matter is scheduled for a telephonic status conference on November 16, 2021 at 11:00 a.m. (Eastern) to discuss case status. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 03/19/2021) |
| 03/19/2021 | 97 | ORDER granting Plaintiff's Unopposed 95 Motion to Stay. This matter is STAYED until any proceedings in the United States Supreme Court are resolved. The parties shall file a joint status report every 180 days. Signed by Magistrate Judge Doris L. Pryor on 3/19/2021. (MAC) (Entered: 03/22/2021) |
| 06/25/2021 | 98 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5–3, William R. Groth hereby notifies the Clerk of the court of changed contact information. (Groth, William) (Entered: 06/25/2021) |
| 09/14/2021 | 99 | STIPULATION of Dismissal *as to Counts I and III Only*, as to Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT, filed by All Plaintiffs. (Attachments: # 1 Text of Proposed Order)(Sniderman, Mark) (Entered: 09/14/2021) |
| 09/15/2021 | 100 | STATUS REPORT , *Joint,* by All Plaintiffs. (Sniderman, Mark) (Entered: 09/15/2021) |
| 09/21/2021 | 101 | DISMISSAL (Marginal Notation) – The Court acknowledges the Stipulation of Dismissal of Count I, with prejudice, and Count III, without prejudice, **only**, dkt. 99 . Signed by Judge James Patrick Hanlon on 9/20/2021.(DWH) (Entered: 09/21/2021) |
| 09/21/2021 | 102 | MOTION to Withdraw Attorney Appearance *of Parvinder K. Nijjar*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of |

| | | |
|---|---|---|
| | | Proposed Order)(Garn, Jefferson) (Entered: 09/21/2021) |
| 09/22/2021 | 103 | ORDER granting 102 Motion to Withdraw Attorney Appearance. Attorney Parvinder Kaur Nijjar withdrawn. Copy to Michael Anthony Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 9/22/2021. (SWM) (Entered: 09/22/2021) |
| 09/24/2021 | 104 | Unopposed MOTION *to Lift Stay*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Sniderman, Mark) (Entered: 09/24/2021) |
| 09/28/2021 | 105 | ORDER granting Plaintiffs' 104 Motion to Lift Stay. The stay in this matter is LIFTED. Signed by Magistrate Judge Doris L. Pryor on 9/28/2021. (SWM) (Entered: 09/28/2021) |
| 11/01/2021 | 106 | AMENDED SCHEDULING ORDER (TIME ONLY) – This matter is currently set for a telephonic Status Conference on November 16, 2021 at 11:00 a.m. The Court now changes the time to 11:15 a.m. (Eastern) on that same date. Counsel shall attend the conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Copy to Michael Anthony Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 11/1/2021.(SWM) (Entered: 11/02/2021) |
| 11/18/2021 | 108 | MINUTE ORDER for proceedings held before Magistrate Judge Doris L. Pryor: The parties appeared by telephone for a Status Conference on November 16, 2021. The parties discussed the status of the case. Discovery is reopened for the limited purpose of exploring issues related to Plaintiffs' standing. The parties intend to file cross−motions for summary judgment on the remaining claim, Count II related to violations of the 26th Amendment. Summary judgment briefing shall proceed as follows: Plaintiffs' motion for summary judgment shall be filed on or before December 10, 2021. Defendants' response to Plaintiffs' motion for summary judgment and cross− motion for summary judgment shall be due on or before January 24, 2022. Plaintiffs' reply in support of their motion for summary judgment and response to Defendants' motion for summary judgment shall be filed on or before February 23, 2022. Defendants' reply in support of their motion for summary judgment shall be due on or before March 16, 2022. Signed by Magistrate Judge Doris L. Pryor. (CAG) (Entered: 11/18/2021) |
| 12/02/2021 | 109 | MOTION to Withdraw Attorney Appearance , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Hudson, Kian) (Entered: 12/02/2021) |
| 12/06/2021 | 110 | ORDER granting 109 Motion to Withdraw Attorney Appearance. Attorney Kian J. Hudson withdrawn. Signed by Magistrate Judge Doris L. Pryor on 12/6/2021. (SWM) (Entered: 12/06/2021) |
| 12/10/2021 | 111 | STIPULATION of Dismissal *of Plaintiff Elizabeth Kmieciak Only*, as to Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT, filed by All Plaintiffs. (Sniderman, Mark) (Entered: 12/10/2021) |
| 12/10/2021 | 112 | MOTION for Summary Judgment , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Exhibit 1 – Second Declaration of Barbara Tully, # 2 Exhibit 2 – Second Declaration of Katharine Black, # 3 Exhibit 3 – Second Declaration of Marc Black, # 4 Exhibit 4 – Second Declaration of David Carter, # 5 Exhibit 5 – Second Declaration of Rebecca Gaines, # 6 Exhibit 6 – Second Declaration of Chaquitta McCreary, # 7 Exhibit 7 – Second Declaration of David Slivka, # 8 Exhibit 8 – Second Declaration of Dominic Tumminello)(Sniderman, Mark) (Entered: 12/10/2021) |

| 12/10/2021 | 113 | BRIEF/MEMORANDUM in Support re 112 MOTION for Summary Judgment , filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 12/10/2021) |
|---|---|---|
| 12/14/2021 | 114 | DISMISSAL (Marginal Notation) – The Court acknowledges the Stipulation of Dismissal without prejudice, dkt. 111 , each party bearing their own costs and attorney fees. The Clerk is DIRECTED to dismiss only Plaintiff Elizabeth Kmieciak from the docket. Signed by Judge James Patrick Hanlon on 12/14/2021.(DWH) (Entered: 12/15/2021) |
| 01/24/2022 | 115 | Unopposed MOTION for Extension of Time to File Response to February 7, 2022 re 112 MOTION for Summary Judgment , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Abshire, Courtney) (Entered: 01/24/2022) |
| 01/26/2022 | 116 | ORDER – This matter comes before the Court on Defendants' First Unopposed Motion for Enlargement of Time, Dkt. [ 115 ]. The Court, having considered the same, hereby finds that said motion should be GRANTED. Defendants' response to Plaintiffs' motion for summary judgment and cross–motion for summary judgment shall be due on or before February 7, 2022. Plaintiffs' reply in support of their motion for summary judgment and response to Defendants' motion for summary judgment shall be filed on or before March 9, 2022. Defendants' reply in support of their motion for summary judgment shall be due on or before March 30, 2022. Signed by Magistrate Judge Doris L. Pryor on 1/26/2022. (SWM) (Entered: 01/26/2022) |
| 02/07/2022 | 117 | Cross MOTION for Summary Judgment , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Abshire, Courtney) (Entered: 02/07/2022) |
| 02/07/2022 | 118 | RESPONSE in Opposition re 117 Cross MOTION for Summary Judgment *and Brief in Support of Defendant's Cross Motion for Summary Judgment*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Abshire, Courtney) (Entered: 02/07/2022) |
| 02/23/2022 | 119 | MOTION for Leave to File *Withdraw Appearance of William P. Sweet*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) (Entered: 02/23/2022) |
| 02/24/2022 | 120 | ORDER granting William P. Sweet's 119 Motion for Leave to Withdrawn Appearance. Signed by Magistrate Judge Doris L. Pryor on 2/24/2022. (SWM) (Entered: 02/25/2022) |
| 03/02/2022 | 121 | Unopposed MOTION for Extension of Time to File Reply to March 16, 2022 re 112 MOTION for Summary Judgment ,*and Response re 117 Cross–Motion for Summary Judgment*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, SHELLY BROWN, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., JANICE JOHNSON, ELIZABETH KMIECIAK, CHAQUITTA MCCLEARY, KATHERINE PAOLACCI, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Sniderman, Mark) (Entered: 03/02/2022) |
| 03/08/2022 | 122 | ORDER granting Plaintiff's 121 Unopposed MOTION for Extension of Time to File Reply to March 16, 2022 re 112 MOTION for Summary Judgment and Response to 3/16/20222 re 117 Cross–Motion for Summary Judgment. Copy to Michael Anthony Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 3/8/2022. (SWM) (Entered: 03/08/2022) |
| 03/08/2022 | 123 | *** WITHDRAWN PER DKT. NUMBER 125 *** MOTION to Withdraw Attorney Appearance , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) Modified on 3/9/2022 (DWH). Modified on 3/16/2022 (SWM). (Entered: 03/08/2022) |

| 03/09/2022 | 124 | MOTION to Withdraw *ECF 123*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) (Entered: 03/09/2022) |
|---|---|---|
| 03/16/2022 | 125 | ORDER – This matter comes before the Court on Defendants' Motion to Withdraw Docket #123, Dkt. [ 124 ]. The Court, being duly advised, now GRANTS said Motion. Defendants' Motion to Withdraw ECF 123 (Dkt. 124 ) shall be WITHDRAWN from the record. Copy to Michael Anthony Scodro via US Mail Signed by Magistrate Judge Doris L. Pryor on 3/16/2022. (SWM) (Entered: 03/16/2022) |
| 03/16/2022 | 126 | REPLY in Support of Motion re 112 MOTION for Summary Judgment *, and Response to 117 Defendants' Cross–Motion for Summary Judgment*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., CHAQUITTA MCCLEARY, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Sniderman, Mark) (Entered: 03/16/2022) |
| 03/16/2022 | 127 | MOTION *for Oral Argument*, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., CHAQUITTA MCCLEARY, DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (Attachments: # 1 Text of Proposed Order)(Sniderman, Mark) (Entered: 03/16/2022) |
| 04/07/2022 | 128 | Unopposed MOTION for Extension of Time to File Reply to April 18, 2022 re 117 Cross MOTION for Summary Judgment , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Abshire, Courtney) (Entered: 04/07/2022) |
| 04/08/2022 | 129 | ORDER granting Defendants' 128 Second Unopposed MOTION for Extension of Time to File Reply to April 18, 2022 re 117 Cross MOTION for Summary Judgment. Copy to Michael Anthony Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 4/8/2022. (SWM) Modified on 4/11/2022 (SWM). (Entered: 04/11/2022) |
| 04/18/2022 | 130 | Third MOTION for Extension of Time to File Reply to April 22, 2022 re 117 Cross MOTION for Summary Judgment *,Unopposed*, filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Attachments: # 1 Text of Proposed Order)(Garn, Jefferson) (Entered: 04/18/2022) |
| 04/22/2022 | 131 | REPLY in Support of Motion re 117 Cross MOTION for Summary Judgment , filed by Defendants ZACHARY E. KLUTZ, CONNIE LAWSON, S. ANTHONY LONG, PAUL OKESON, SUZANNAH WILSON OVERHOLT. (Garn, Jefferson) (Entered: 04/22/2022) |
| 04/22/2022 | 132 | ORDER granting Defendants' 130 Third Motion for Extension of Time to File Reply to April 22, 2022 re 117 Cross MOTION for Summary Judgment. Copy to Michael Anthony Scodro via US Mail. Signed by Magistrate Judge Doris L. Pryor on 4/22/2022. (SWM) (Entered: 04/25/2022) |
| 06/06/2022 | 133 | NOTICE of Substitution of Appearance by Caryn Nieman Szyper replacing *Courtney L. Abshire* on behalf of All Defendants (Attachments: # 1 Text of Proposed Order) (Szyper, Caryn) (Entered: 06/06/2022) |
| 07/07/2022 | 134 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5–3, William R. Groth hereby notifies the Clerk of the court of changed contact information. (Groth, William) (Entered: 07/07/2022) |
| 09/29/2022 | 135 | ORDER ON MOTIONS FOR SUMMARY JUDGMENT – Plaintiffs' motion for summary judgment is DENIED, dkt. 112 , and Defendants' motion for summary judgment is GRANTED, dkt. 117 . Plaintiffs' motion for oral argument is DENIED as unnecessary. Dkt. 127 . The clerk shall update the docket to reflect the automatic party substitutions reflected in this order's caption. Final judgment will issue in a separate entry (SEE ORDER FOR ADDITIONAL INFORMATION). Signed by Judge James Patrick Hanlon on 9/29/2022. (DWH) (Entered: 09/29/2022) |

| 09/29/2022 | 136 | CLOSED FINAL JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 58 – Having this day directed the entry of final judgment, the Court now enters FINAL JUDGMENT in favor of Defendants and against Plaintiffs. Plaintiffs shall take nothing by their complaint and this action is terminated. Signed by Judge James Patrick Hanlon on 9/29/2022. (DWH) (Entered: 09/29/2022) |
|---|---|---|
| 10/14/2022 | 137 | NOTICE OF APPEAL as to 136 Closed Judgment, filed by Plaintiffs KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO. (No fee paid with this filing) (Attachments: # 1 Exhibit Docketing Statement)(Sniderman, Mark) (Entered: 10/14/2022) |
| 10/17/2022 | 138 | ***PLEASE DISREGARD DOCKETED IN ERROR.*** RECEIPT #2149 for filing fee in the amount of $402.00, paid by CAMERON OMARI. (DRB) Modified on 10/17/2022 (DRB). (Entered: 10/17/2022) |
| 10/17/2022 | 139 | DOCKETING STATEMENT by KATHARINE BLACK, MARC BLACK, DAVID CARTER, REBECCA GAINES, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, BARBARA TULLY, DOMINIC TUMMINELLO re 137 Notice of Appeal (Sniderman, Mark) (Entered: 10/17/2022) |
| 10/17/2022 | 140 | USCA Appeal Fees received $ 505 receipt number 2167 re 137 Notice of Appeal filed by DOMINIC TUMMINELLO, MARC BLACK, BARBARA TULLY, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, REBECCA GAINES, DAVID CARTER, KATHARINE BLACK (USCA # not assigned) (DRB) (Entered: 10/17/2022) |
| 10/18/2022 | 141 | PARTIES' SHORT RECORD re 137 Notice of Appeal – **Instructions for Attorneys/Parties attached.** (LBT) (Entered: 10/18/2022) |
| 10/18/2022 | 142 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 137 Notice of Appeal. – **for Court of Appeals Use Only.** (LBT) (Entered: 10/18/2022) |
| 10/18/2022 | 143 | USCA Case Number 22–2835 for 137 Notice of Appeal filed by DOMINIC TUMMINELLO, MARC BLACK, BARBARA TULLY, INDIANA VOTE BY MAIL, INC., DAVID SLIVKA, REBECCA GAINES, DAVID CARTER, KATHARINE BLACK. (LBT) (Entered: 10/18/2022) |

## CERTIFICATE OF COMPLIANCE

Pursuant to Seventh Circuit Rule 30(d), I hereby certify that this Short Appendix includes all the materials required by Circuit Rules 30(a) and (b).


/s/ *Jed W. Glickstein*
Jed W. Glickstein

*Counsel for Plaintiffs-Appellants*